KIRSCHNER *et al.*, *Appellants*, v. KIRSCHNER.

Division One, December 22, 1892.

1. **Equity**: RELATION OF TRUST AND CONFIDENCE: SUPERIOR INFLUENCE. It is a recognized doctrine of equity that where one person has acquired over another a position of superior influence or advantage by reason of relationship, trust or confidence, the court will require proof of the former that any business dealings between such persons are entirely fair and honest on his part.

2. ———: ———: ———: PURCHASE OF LAND. A transaction between certain heirs and their uncle (who was also their agent), culminating in his purchase of their land, reviewed and held valid.

*Appeal from Buchanan Circuit Court.*—HON. O M. SPENCER, Judge.

AFFIRMED.

*Reed, James & Randolph* for appellants.

(1) A sale from principal to agent is voidable at the election of the principal, unless "there is the most entire good faith and full disclosure of all the facts and circumstances, and an absence of all undue influence, advantage or imposition." Story on Equity Jurisprudence [4 Ed.] close of sec. 315, p. 339, secs 316a, 317–323; 2 Pomeroy on Equity Jurisprudence, secs. 956–959; *Keith v. Kellam*, 35 Fed. Rep. 243; *Spencer & Newbold's Appeal*, 80 Pa. St. 317; *Hunter v. Hunter*, 50 Mo. 445; *Street v. Goss*, 62 Mo. 226; *Bradshaw v. Yates*, 67 Mo. 221; *McClure v. Lewis*, 72 Mo. 314; *Le Gendre v. Byrnes*, 14 Atl. Rep. 621; *Rubideux v. Parks*, 48 Cal. 215; *Rochester v. Levering*, 4 N. E. Rep. 203; *Savage v. Savage*, 8 Pac. Rep. 754; *Dreegan v. Capner*, 15 Atl. Rep. 819; *King v. Remington*, 29 N. W. Rep. 352; *Allen v. Jackson*, 23 N. E. Rep. 840; *Bogie v. Nolan*, 96 Mo. 85. (2) Even if appellants, Clara and Elizabeth, admit (which they do not) that respondent made to Joseph W. Kirschner the fullest disclosure of every fact and circumstance pertaining to the property and its value, but offered only $2,500 for the property, yet no such disclosure was made to Clara and Elizabeth, and notice to Joseph, one tenant in common, was not notice to Clara and Elizabeth, the other tenants in common, there being no evidence that he was their agent; and the sale is voidable by Clara and Elizabeth. See authorities cited under 1; Freeman on Co-tenancy and Partition, secs. 168–171; 1 Parsons on Contracts [6 Ed.] sec. 10, note *m*. (3) If it be admitted by appellants, Clara and Elizabeth, but it is not—that appellant Joseph conspired with respondent, and aided him in the fraudulent purchase from Clara and Elizabeth of their interests in the property, and that Joseph, though fully informed by respondent of all respond-

ent's knowledge pertaining to the property, yet represented to Clara and Elizabeth the condition and value of the property as shown by the uncontradicted evidence of Joseph, Clara and Elizabeth, still, admitting such to be the circumstances of the sale from Clara and Elizabeth, such fraud on the part of Joseph, the agent, would be the fraud of the respondent, the principal, and Clara and Elizabeth could avoid the sale as to them. See authorities cited under 1 and 2. (4) If respondent made the fullest disclosure to Joseph W. Kirschner, but offered only $2,500, and acted with the utmost good faith toward Joseph; and if Joseph had been desirous of disposing of his interests in the property at a sacrifice, and on going to Montana stated to Clara and Elizabeth, for the purpose of inducing them to join in the sale to respondent, that respondent had represented the property to be in the condition and of the value as shown by the uncontradicted evidence of Joseph, Clara and Elizabeth, and that respondent's offer of $2,500 was the full value of the property; still, if Clara and Elizabeth conveyed their interests in the property in ignorance of its real value, and relying upon the judgment and representations of respondent, as so reported to them by Joseph, they could avoid the sale as to themselves. See authorities cited under 1 and 2.

*J. W. Mytton* and *Spencer, Burnes & Mosman* for respondent.

(1) In an action to rescind a sale for fraud and to recover the property, plaintiff must establish representation, falsity, scienter, disposition and injury, and all these must occur before a recovery can be had. *Hotchkiss v. Bank,* 11 N. Y. 220; 57 Hun, 594; *Hotchkiss v. Martin,* 11 N. Y. S. 806; 58 Hun, p. 606.

(2) Even though appellants relied on the false representations as to the value and condition of the property, that would be no ground for rescission in the absence of evidence of actual fraud or deceit, as they were but expressions of opinion. *Lucas v. Crippin*, 41 N. W. Rep. (Iowa) 205; 76 Iowa 507. (3) The court will not decree a rescission of a contract fully executed, where the evidence is vague and unsatisfactory. It is not sufficient that the grantor made a bad bargain. *Kern v. Middleton*, 16 Atl. Rep. (Pa.) 640; Weekly Notes of Cases, 24, p. 393. The consideration also, which will warrant a court of equity in setting aside a deed, must be established as of the date of the contract. *Pennybacker v. Laidley*, 33 W. Va. 624. (4) If respondent made the fullest disclosure to appellants of the situation, and acted with good faith towards them, and acquainted them with all the facts to his knowledge about the property, and insisted upon disinterested advice being had, and offered appellants the sum of $2,500 for the property, equity will not afford relief in favor of a party who acted merely in ignorance of the facts, where the actual knowledge could have been obtained by the exercise of due care, diligence and inquiry. *King v. White*, 21 Atl. Rep. (Vt.) 535.

BARCLAY, J.—This is a suit to rescind a sale of real estate in the city of St. Joseph for alleged fraud and undue influence, and for a decree for title accordingly.

Plaintiffs are the children of Jacob Kirschner. The husband of each of the married plaintiffs is also joined with her. The defendant, John Peter Kirschner, is the uncle of the principal plaintiffs. He denied the charges of the petition.

Upon a trial, a finding and decree for defendant resulted, from which plaintiffs appealed.

The following is a sufficient outline of the case for present purposes:

In 1869 Jacob Kirschner died, leaving plaintiffs Joseph, Clara and Elizabeth, his only children, then aged ten, seven and five years respectively. Their mother had died three years before.

The real estate in controversy, situated in St. Joseph, Missouri, was inherited by the minors from their father.

The defendant, their uncle, administered upon the estate of his brother Jacob; and, after his discharge as administrator, continued to care for, and look after said real estate for the children during their minority, and afterwards, up to the time he purchased the same of them, January 31, 1885.

Defendant lived some three miles from St. Joseph, Missouri, and has lived there for more than twenty years past. Joseph Kirschner, after his father's death, lived in Savannah, Missouri until 1874, when he moved to Clarinda, Iowa, and there resided until January, 1885, when he moved to Montana, and has lived there since.

Clara, after the death of her father, was, at seven years of age, taken by defendant, and lived with him as a member of his family until 1882, when she married and removed to Montana, where she has since resided.

Elizabeth, on the death of her parents, was taken to her grandparents in Savannah, Missouri, and lived there until her marriage to Mr. Clarke in 1881, since which time she, too, has lived in Montana.

After the death of Jacob Kirschner, the interests of his children, Joseph, Clara and Elizabeth, in the real estate were wholly looked after by defendant, who collected rents, made repairs, paid taxes, etc. The heirs had nothing whatever to do with the care of

the property until they conveyed it to respondent.   He was their agent as to the property when he bought it from them.

In January, 1885, Joseph Kirschner came to St. Joseph from Montana and began negotiations for the sale of the property, on behalf of his sisters and himself, all of whom were then in Montana.   The negotiations culminated in a conveyance to defendant, January 31, 1885.   The price paid was $2,500 in cash.

The good faith of that transaction forms the subject-matter of the suit.

The idea of the sale to defendant was first advanced by Joseph Kirschner.   From the evidence of conversations between him and disinterested parties, corroborated by that of defendant, it appears that defendant strongly advised against a sale; said he did not want the land, but that, if the heirs insisted on selling, he would give them as much for it as anyone else would offer.   Thereupon Joseph saw other friends and made some inquiries as to the value and expediency of selling, and finally offered the land to his uncle for $2,500.

The defendant testified (and his testimony on that point was not denied) that he told Joseph that the property was assessed for taxation at $2,700; that it would be better to hold on to it; but that Joseph declared that he could do better with the money for business investments in Montana; that then defendant told him he would give as much as anybody for it; and that, finally, after some days, Joseph came and offered it to him for $2,500.   Then defendant told him he would take it at that price if his sisters were satisfied.

Joseph returned at once to Montana, and wrote, January 20, 1885, that they all would sell at the price mentioned, and to have the deed made and sent to them.   He took occasion then to thank his uncle for

his kindness. The deed was accordingly sent to Montana and executed there by the heirs. The consideration money was forwarded by defendant from St. Joseph in drafts, as requested by the plaintiffs.

The real value of the land at the time of the sale is a point in the case about which the testimony conflicts. Some real estate experts, called for plaintiffs, were of opinion that it was worth about $5,000; but the same witnesses, on cross-examination, admitted that the real estate market was "very dull, very flat" at and before that time; that "there was very little doing," and that it was almost impossible to sell property for cash at any price then.

There also was evidence for defendant that the market value of the land in question was not greater than the price paid.

Joseph Kirschner was then about twenty-five years old. His sisters were of full age and all lived far away from the defendant at the time of the sale. During the entire term of defendant's administratorship of the estate, and care of the property for his brother's children (a period of about fifteen years), he made no charge against them of any kind for his services as administrator of the estate or otherwise. The relations of the parties during all that period were most intimate and cordial.

The evident cause of this litigation is the sudden enhancement of values, or "boom" in real estate in St. Joseph, which, it seems, began within the year after this sale, but of course that fact can have no legitimate bearing to establish any fraud on the part of defendant, inasmuch as there is no evidence that he had any knowledge whatever of its coming, unless it can be inferred from his advice to plaintiffs not to sell, but to hold the property; which advice they did not follow.

It is now a recognized doctrine of equity that, where

State ex rel. Hamilton v. The Hannibal & St. J. Ry. Co.

one person has acquired over another a position of superior influence or advantage by reason of relationship, trust or confidence (whatever its origin), and business dealings occur between such parties, the court will require proof of the former that the dealings were fair and honest in all respects on his part, under penalty of rescinding such dealings entirely.

It is unnecessary, in the case at hand, to reduce this rule to more definite shape, since we shall assume without discussion the proposition advanced by the plaintiffs, that the relationship of the parties before the court is such as to place on the defendant the burden imposed by that rule. But we think he has shown the transaction in question to be fair, honest, equitable and free of any attempt on his part to defraud his brothers' children.

Joseph Kirschner assumed to represent his sisters in the negotiations, and they ratified and accepted his action on their behalf by closing the sale, and by receiving and keeping the purchase money. The suggestion that he should be regarded as the agent of defendant seems wholly untenable in the circumstances.

After fully reviewing the testimony we entirely agree in the finding of the learned trial judge in favor of defendant. The judgment is affirmed. SHERWOOD, C. J., BLACK and BRACE, JJ, concur.