SARAH McDERMEITT et al., Appellants, v. LUCY KEESLER et al.

Division Two, February 27, 1912.

1. **CONVEYANCE: Undue Influence: Grantee's Activity in Transaction.** The fact that the grantee went for the scrivener to prepare the deed by which his father conveyed the land to him alone, to the exclusion of his eight brothers and sisters; that he went to two neighbors and requested them to come to his father's house and witness his will; and that he lived under the same roof with his parents, are circumstances that are frequently found in cases of fraud and duress in the procurement of a deed, but they do not of themselves establish fraud;

McDermeitt v. Keesler.

and when the grantor's wife explains them by testifying that the grantor became alarmed by reason of his ailment, at a time when the grantee was unpaid and unrequited for many years of filial service, and sent for him and asked him to go for the scrivener, they have no tendency to prove that the grantee was the moving party in the transaction or that he was guilty of any fraud or undue influence.

2. ———: **Incapacity.** The deed was made in 1901, and the grantor was adjudged insane in 1906. At the time it was made the grantor and his wife were old, and he had become alarmed at his ailment and had his wife call his son, the grantee, and asked him to go for a scrivener. The grantee was forty-six years of age, and had lived with them nearly all his life, and rendered them valuable services, which had not been paid for. The other eight children had left home, some of them many years before. Numerous witnesses gave positive opinion evidence that the grantor was capable of transacting business and conveying property at the time the deed was made. They testified that after he recovered from his illness in 1901 he in fact transacted business for two or three years; that he went to town and paid his doctor bill, made purchases at the stores and paid for them, attended to his business at the banks in which accounts were kept in his name, and sold hogs and cattle, refusing to sell unless he received his price, and those who dealt with him in these transactions testified that he knew what he was doing and was capable of taking care of his interests. The deed was placed on record within a few days after its execution, and other members of his family came to visit him and the deed was the subject of conversation. He thereafter paid taxes on nineteen acres mentioned in the deed, saying it was all the land he owned, but paid no taxes on the remaining ninety-nine acres which is the property in controversy on this appeal. *Held*, that, in spite of the fact that many witnesses (relatives, neighbors and experts) testified that the grantor was so infirm and weak, in body and mind, that he did not know what he was doing or what the deed contained, when he made his mark thereto, the trial court properly ruled that the deed could not be set aside for incapacity on the part of the grantor.

3. ———: ———: **Services of Child.** In passing upon the capacity of an aged father to make a voluntary deed, the fact that the grantee, his son, had lived with his parents and worked for them without remuneration until he was forty-six years of age, and that their relations had always been congenial and filial, cannot be overlooked.

4. ———: ———: **Burden.** The burden is on plaintiffs to prove that the grantor in a deed was incapacitated to make it.

5. ———: ———: **Change in Situation.** The grantor's intention at the time the deed was made and the circumstances then surrounding him, and not his capacity afterwards, are what the law considers. The fact that parents, aged and feeble, made a deed to an unmarried son forty-six years of age, and that afterwards he married and died before they did, and that the land will go to his widow and posthumous child, cannot be held to render invalid a deed made in good faith and in accordance with the intention of the parties at the time.

6. ———: **Valid in Part and Invalid in Part: Matters for Review.** Where the deed conveyed two tracts, one of nineteen acres and another of ninety-nine, and the court set it aside as to the nineteen-acre tract but refused to set it aside as to the ninety-nine-acre tract, and plaintiffs alone appeal, the finding as to the nineteen-acre tract will not be reviewed on appeal.

7. **COSTS: Equity: Decree for Both Parties.** Where the cause is in equity and the decree is partly in favor of plaintiffs and partly in favor of defendants, the appellate court will not review the action of the trial court in apportioning the costs between the parties.

Appeal from Andrew Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*Perry A. Brubaker, James W. Boyd* and *K. D. Cross* for appellants.

(1) That part of the decree of the court which fails to set aside the deed as to the ninety-nine-acre tract of land mentioned in the petition is erroneous, and should be reversed. 1. Said part of said decree is against the law and the evidence, and the weight of the evidence. 2. The evidence conclusively shows that Henry Keesler, deceased, and Mary Keesler, his wife, were aged, infirm, weak in body and mind, not capable of attending to any business, and that they did not, at the time it is alleged they made their marks to said deed, realize, understand or know what they were doing or what the deed contained. Ennis v. Burnham, 159 Mo. 494. (2) The grantee in said deed was the son of the alleged grantors, the personal agent and

manager of the old gentleman, Henry Keesler, looked after most of his business matters for him, and was his confidential agent and adviser in regard to the most of what business he had, and he had at all times a controlling and dominating influence over him. Under such circumstances the court will require proof that the dealings were fair and honest in all respects on the grantee's part. Kirschner v. Kirschner, 113 Mo. 296; Martin v. Baker, 135 Mo. 503. (3) The fact that the court found that Henry Keesler and his wife did not know what was contained in said deed, and on that account set aside the said deed as to the tract of land, consisting of nineteen and seventy one-hundredths acres, ought to be considered by this court in the trial of this case anew, because, with all due deference to the circuit court, it would seem that if the said grantors on account of senile dementia, a serious physical disease, could not and did not understand what was in said deed, the said deed ought to be set aside not in part but *in toto*. (4) There could be no division of the costs as to the tracts of land, because the case was tried as one case and all the facts were made in the trial of the case as one case, and if the plaintiff won or recovered only a portion of the ground for which they were suing, then the defendants are guilty, and all the costs in the case should be adjudged against the defendants. R. S. 1909, secs. 2263-2268; Hawkins v. Nowland, 53 Mo. 328; Berry v. Rood, 225 Mo. 96.

*Booher & Williams* for respondents.

(1) In the case of Hendricks v. Woods, 79 Mo. 590, Sherwood, J., said: "It has been our custom even in cases of equitable cognizance to defer somewhat to the findings of the trial court." In the case of Chouteau v. Allen, 70 Mo. 290, the same judge says: "After a careful perusal of the evidence, a tangled web of infinite contradictions, we have deemed it best, as much of the testimony was taken orally, and opportunity

thus afforded the lower court, which is denied to us, of observing the demeanor of the witnesses, to defer somewhat to that court, and to give its findings our sanction.'' Erskine v. Lowenstine, 82 Mo. 301; Anderson v. Griffith, 86 Mo. 549; Bank v. Murray, 88 Mo. 191; Boggen v. Boggen, 127 Mo. 305; Daily v. Daily, 125 Mo. 96; Taylor v. Crockett, 123 Mo. 300; Armstrong v. Logan, 115 Mo. 465; Jones v. Thomas, 217 Mo. 540. (2) A disposing mind and memory may be said to be one which is capable of presenting to the testator all of his property, and all the persons who come reasonably within the region of his bounty, and if a person has sufficient understanding and intelligence to understand his ordinary business, and to understand what disposition he is making of his property, then he has sufficient capacity to make a will, and this is true though the mind of such person may be impaired by age and disease. Benoist v. Murrin, 58 Mo. 322. That rule has never been questioned by this court, but it has met with universal approval whenever presented for consideration. Jones v. Thomas, 218 Mo. 538; Chadwell v. Reed, 198 Mo. 381; Hamon v. Hamon, 180 Mo. 685; Hughes v. Rader, 183 Mo. 630; Cast v. Lust, 142 Mo. 638; Sehr v. Linderman, 153 Mo. 276. The law ordinarily requires a higher degree of mentality to make a contract than to make a will. That is true only where the contract is dual in character, operating in the exchange of values, and the grantor must compete in an intellectual struggle with the grantee. But where the deed is not for an exchange of the values, implied in the ordinary exchange of real estate, but is intended by the grantor as a gift to a son in consideration of love and affection, which is the basis of most wills, no higher degree of intelligence is required of the grantor to make the deed than is required of him to make the will. Jones v. Thomas, 218 Mo. 508. The deed in controversy was made as a gift, not as a contract. Chadwell v. Reed, 198 Mo.

359; Richardson v. Smart, 152 Mo. 623.   The great
weight of the evidence is that the grantor was of sound
mind at the time he executed the deed.   The law in its
application to the facts in this case is well settled. The
presumption is that all men are sane.   The parties
claiming under the deed are not bound to prove the
sanity of the grantor.   The burden of proving the un-
soundness of mind and incapacity of the grantor at
the time of the execution of said deed rests upon the
party seeking to have the deed set aside.   Chadwell
v. Reed, 198 Mo. 381; Cutler v. Zollinger, 117 Mo. 92;
McKissock v. Groom, 148 Mo. 459; Hamon v. Hamon,
180 Mo. 685; Southworth v. Southworth, 173 Mo. 59;
Hughes v. Rader, 183 Mo. 630; Crowder v. Searcy, 103
Mo. 97.   (3) By undue influence is meant such influ-
ence as amounts to force, coercion or over-persuasion,
destroying the free agency and will power of another.
It is not merely the influence of affection or desire to
gratify the wishes of one near and dear to the testa-
tor.   Sehr v. Linderman, 153 Mo. 289; McFadden v.
Catron, 138 Mo. 197; Riley v. Sherwood, 144 Mo. 366.
An affirmative showing of such undue influence is re-
quired to be made, either by direct facts shown, or by
facts and circumstances from which undue influence
results as a reasonable and fair inference and not a
mere conjecture.   Doherty v. Gilmore, 136 Mo. 420;
Riley v. Sherwood, 144 Mo. 354.   There is no evidence
in this case tending to show trust or confidence as those
terms are known to the law between the said Henry
Keesler, deceased, and his son, Lafayette, excepting
that which exists usually between parent and child,
and such relationship is not sufficient to justify the
setting aside of a deed of conveyance from father to
son without showing the exercise of some undue influ-
ence or the existence of fraud or that some advantage
had been taken by the son of the father's weakened
condition of mind.   Jones v. Thomas, 218 Mo. 536;
Huffman v. Huffman, 217 Mo. 182; Studybaker v. Cof-

field, 159 Mo. 596; Campbell v. Carlisle, 162 Mo. 634; Doherty v. Gilmore, 136 Mo. 414; McKissock v. Groom, 148 Mo. 467. The influence must be such as amounts to moral coercion. Morton v. Paxton, 110 Mo. 456; Carl v. Gabel, 120 Mo. 283; Von de Veld v. Judy, 143 Mo. 348. (4) Lafayette Keesler in his lifetime never claimed the nineteen-acre tract. Henry Keesler always claimed the nineteen acres. It had been assessed to Henry Keesler and the ninety-nine-acre tract had been assessed to Lafayette Keesler and Henry Keesler had caused the change on the collection books to be made and defendant, Lucy Keesler, believing that the notary had included this description by mistake, consented to the correction in the decree. But for this the finding would doubtless have been for the defendants as to all the land. Kline says the old deed from which he copied, "contained more land than he wished to convey." Evidently Kline, in eliminating these lands, failed to take out the nineteen acres.

KENNISH, J.—This is an appeal from a judgment of the circuit court of Andrew county. Appellants, plaintiffs below, are children and heirs of Henry Keesler, deceased, and his widow, Mary Keesler. Respondents, defendants below, are the widow and minor son of Lafayette Keesler, deceased, the latter having died about a year prior to the death of his father, the said Henry Keesler.

It is alleged in the petition that Henry Keesler, deceased, in his lifetime, was seized in fee of two tracts of land in Andrew county, Missouri, particularly described in the petition, one containing ninety-nine acres and the other about nineteen acres; that said Henry Keesler resided upon and occupied said land as his homestead until he was committed to an insane asylum in the month of August, 1906; that on the 15th day of January, 1901, the said Henry Keesler and his wife, Mary Keesler, executed a paper purporting to

convey to their son Lafayette Keesler all of the said described lands, being all of the real estate then owned by the said Henry Keesler; that at the time of the execution of the said paper the said Henry Keesler was of unsound mind and did not have sufficient mental capacity to make said pretended deed; that the said Lafayette Keesler, through fraud and undue influence and control over the mind of the said Henry Keesler, procured the execution of said pretended deed, without any consideration whatever; that on account of the facts alleged, the said pretended deed is fraudulent, null and void. The prayer of the petition is that the court render a judgment and decree setting aside and annulling the said pretended deed and declaring it to be null and void, and for general relief.

The answer is a general denial.

The case was tried at the November term, 1907. A large number of witnesses testified in behalf of the respective parties. Declarations of law were asked by the defendants and refused by the court. None were asked by the plaintiffs. The court took the case under advisement, and at the November term, 1908, rendered a decree in favor of plaintiffs as to the nineteen-acre tract described, on the ground that it was not intended to be conveyed and that it was included in the deed by mistake of the scrivener, but found in favor of the defendants as to the ninety-nine acre tract.

Plaintiffs appealed to this court.

At the time of the execution of the deed in controversy, to-wit, January 15, 1901, Henry Keesler and his wife, Mary Keesler, were living on their farm of 118 acres, near the town of Helena, in Andrew county. They were then near eighty years of age and had owned and lived on said farm about twenty years. They had nine children then living, three sons and six daughters. All of the children except Lafayette Keesler had left the home of their parents; some of them many

years before. Lafayette Keesler was then about forty-seven years of age, and had made his home with his parents practically all of his life. He had been away a few years at one time, but his parents urged him to return and make his home with them, which he did. He had married and built a house on his father's farm, where he lived with his wife until she died without issue, four years before the execution of said deed. After the death of his wife he again made his home with his parents and was living with them, working and helping his father on the farm, at the time when the said deed was executed. He married a second time in August, 1902, and with his wife, the defendant, moved into and made his home in the house in which he had formerly resided with his first wife.

Henry Keesler had in former years helped his other children by giving them land or personal property, but he had not assisted any of them to the extent of the value of the land purported to have been conveyed by the said deed. Lafayette Keesler died in February, 1906, at the age of fifty-two years, leaving surviving him his widow, the defendant Lucy Keesler. The other defendant, Paul Lafayette Keesler, is a posthumous child, having been born several months after his father's death. Henry Keesler was adjudged insane in the year 1906, and was placed in an insane asylum, where he died on the 11th day of January, 1907.

Both sides are in substantial agreement as to the foregoing facts.

The deed is attacked upon two separate grounds: First, want of mental capacity of the grantor, Henry Keesler, to make the deed; second, fraud and undue influence of the grantee in procuring the execution of the deed.

Appellants complain that the decree as to the ninety-nine acre tract is against the law and the evidence, and should be reversed.

The main ground of attack upon the deed at the trial was the want of mental capacity of the grantor, Henry Keesler. As to the issue of fraud, it may be safely asserted that there is an entire absence of any direct evidence in the record tending to prove fraud or undue influence on the part of Lafayette Keesler in the procurement of the deed. There are circum- stances, it is true, such as the fact that he went for the scrivener to prepare the deed and take the acknowl- edgments thereto; that he went to two neighbors and requested them to come to his father's house where they witnessed a will; that he lived under the same roof with his parents; circumstances which are fre- quently found in cases of fraud and duress in the pro- curement of a deed or a will. But it was shown by the uncontradicted testimony of the plaintiff, Mary Kees- ler, one of the grantors and a witness for plaintiffs, that when Henry Keesler became alarmed by reason of his ailment, the suggestion as to making a disposi- tion of his property came from him, and the son Lafe, who was in the cellar sorting potatoes, was sent for and asked by his father to go for the scrivener. So far as this record discloses, if the father had died in that sickness, as he feared, without having made the deed in controversy, the son, then nearly fifty years of age, would have had nothing to show for his years of serv- ice for his parents. It was doubtless that fact that caused the father and mother to be concerned about making some disposition of the property in apprehen- sion of death. In any event there is no evidence tend- ing to prove that the son was the moving party in the transaction.

It is contended by appellants that the facts in evidence establish the existence of what is termed in law a confidential relation between the son and fa- ther, and that because of said relation when the deed was made the law will presume that it was the result of fraud and undue influence and place the burden

upon the grantee to rebut such presumption. That principle of law is well settled. [Kirschner v. Kirschner, 113 Mo. 290; Ennis v. Burnham, 159 Mo. 494.] However, under the facts of this case, we do not regard it as important whether the evidence is sufficient to raise the confidential relation as claimed by appellants, for even if respondents be held to carry the burden of showing that the instrument was not the product of undue influence, we think the evidence fully satisfies that requirement. We entertain no doubt as to the correctness of the chancellor's conclusion on the issue of fraud.

There was much testimony and a sharp conflict upon the issue of want of mental capacity. There was substantial agreement among the witnesses that Henry Keesler's mind was failing in 1903 and that he continued to grow worse until adjudged insane. And there were many witnesses, relatives, neighbors and experts, who testified that at the time the deed was made the said Henry Keesler was so infirm and weak, in body and mind, that he did not know what he was doing or what the deed contained, when he made his mark thereto. On the other hand, there was opinion evidence of witnesses who were equally positive and equal in number, that he was not only capable of transacting business and conveying his property, but they went further and testified that after he recovered from his ailment in 1901 he did in fact transact business for two or three years; that he went to town and paid his doctor bill, made purchases at the stores and paid for them, attended to his business at the banks in which accounts were kept in his name; that he sold hogs and cattle, refusing to sell unless he secured his price. In these transactions and business affairs those who dealt with him testified that he knew what he was doing and was capable of taking care of his interests. In addition to the foregoing, when it is considered that the deed was placed on record within a few days

McDermeitt v. Keesler.

after it was executed; that other members of the family came to visit their parents thereafter and that this deed was the subject of discussion; that thereafter the father paid taxes on the nineteen-acre tract, saying that was all the land he owned, and that he did not thereafter pay taxes on or give in for assessment the ninety-nine-acre tract, it seems reasonable to conclude that he not only knew what he was doing when he sent for the scrivener and executed the deed, but that after he had recovered he was fully satisfied with what he had done.

The fact cannot be overlooked that when the deed was made, the son had been living with his parents and had worked for them without remuneration until he was then past middle life. The relations between the son and the parents were completely congenial. This fact is shown by all the testimony. The mother, although asking the court to set aside the deed, testified that "Lafe always did what his father wanted him to do, and I never knew of him trying to get anything away from his father." Under these circumstances what more natural than that the father, fearing that he might not live, should convey the land to the son in whom he had entire confidence, evidently intending that their relations should continue as in the past, and as they did in fact continue for five or six years until the son's death? At the time of making the deed it doubtless did not enter the minds of the parents that they, aged and feeble as they were, should outlive the son, but the fact that they did outlive him and that a situation developed which they did not contemplate, cannot be held to render invalid an instrument made in good faith and in accordance with the intention of the parties at the time. There can be no doubt that the parents, in making that deed, intended that they should be taken care of by the son and that they should have a home there as long as either should

live. However, that was not made a condition in the instrument, and is not a question for determination in this court.

The presumption of law is that Henry Keesler, deceased, was mentally capable of executing the deed, and the burden of overcoming that presumption was on the plaintiffs. We have read and carefully considered the long record of the testimony, and while there is a sharp conflict in the evidence upon the issue of mental capacity, we think the finding of the court is fully sustained by the record.

Appellants complain of the decree in that it finds for the defendants as to the ninety-nine-acre tract, while finding for the plaintiffs as to the nineteen-acre tract. The defendants did not appeal, and as plaintiffs cannot complain of the decree, in so far as it is in their favor, we are not disposed to review the finding of the court as to the nineteen-acre tract.

Appellants also complain of the action of the trial court in apportioning the costs between the plaintiffs and the defendants. But as this is a suit in equity and as the decree was partly in favor of plaintiffs and partly in favor of defendants, the taxation of the costs was in the discretion of the court. [Bender v. Zimmerman, 135 Mo. 53; Turner v. Johnson, 95 Mo. 431.]

For the reasons given the judgment is affirmed. *Ferriss, P. J.,* and *Brown, J.,* concur.