MARION REDLER, Appellant, v. TRAVELERS' INSURANCE COMPANY, a
Corporation, Garnishee of EMANUEL REDLER.—117 S. W. (2d)
241.

Division One, May 26, 1938.*

J. M. Feigenbaum and Jos. D. Feigenbaum for appellant.

*NOTE: Opinion filed at September Term, 1937, April 1, 1938; motion for rehearing filed; motion overruled at May Term, 1938, May 26, 1938.

*Jones, Hocker, Gladney & Grand* for respondent.

HYDE, C.—The case, recently reassigned to the writer, is a garnishment proceeding to require the Travelers' Insurance Company, as garnishee, to pay to appellant the full amount of a judgment (which with interest was more than $7500) obtained by her against Emanuel Redler for personal injuries sustained in an automobile accident. Garnishee's answer denied indebtedness, and appellant filed a denial of garnishee's answer alleging the issuance of the insurance policy, her version as to how she was injured, and that a judgment was rendered for such injuries. Garnishee filed a reply denying liability on the policy. There was a jury trial, garnishee had a verdict, and judgment was entered discharging garnishee. This appeal was taken from that judgment.

Appellant (referred to in the pleadings as plaintiff) sought to recover the amount of her judgment, through these garnishment proceedings, relying upon the facts stated in her denial of garnishee's answer, to-wit:

"That on or about July 16th, 1926, said garnishee executed and delivered to one Nathan Nemirovsky a policy of liability insurance, . . . to indemnify the said Nathan Nemirovsky and any other person, . . . legally using the said automobile of Nathan Nemirovsky, against loss by reason of liability imposed by law for damages because of bodily injuries sustained by any person if caused by the maintenance or operation of the said automobile described in said policy, . . . for an amount not exceeding ten thousand ($10,000) dollars for any one person injured. . . . That on the evening of August 11, 1926, plaintiff was riding in the said automobile described in policy of insurance hereinabove referred to, and while said automobile was being driven by defendant, Emanuel Redler, with the consent of Nathan Nemirovsky, plaintiff sustained serious injuries due to the carelessness of defendant Emanuel Redler. . . . That on the 15th day of November, 1926, plaintiff filed suit for damages for said injuries against defendant Emanuel Redler, and that Travelers' Insurance Company of Connecticut was advised of said suit and of the setting of same for trial. The said cause was heard by the Circuit Court of the City of St. Louis, . . . and a judgment rendered . . . in favor of plaintiff and against defendant, Emanuel Redler (for $7500.00). . . . That by reason thereof, under the policy of insurance above described, said garnishee, The Travelers' Insurance Company of Connecticut, was at the time of the service of the writ of garnishment, and has since been, indebted to defendant, Emanuel Redler, in the sum of $7500.00, with interest and costs."

Garnishee's reply admitted that the policy was issued to Nathan Nemirovsky and that appellant had a judgment against Emanuel Redler for her injuries, and denied all other allegations. It affirmatively alleged that appellant was the wife of Emanuel Redler (married after judgment); that "at the time the plaintiff sustained the injuries complained of in this action the automobile in which she was riding at the time was being operated by Nathan Nemirovsky, and not by the defendant, Emanuel Redler;" and that "if said policy, by its terms, covers the said Emanuel Redler, then the garnishee alleges the defendant, Emanuel Redler, failed, declined and refused to cooperate with the garnishee as required by the terms of said policy in this, that following said accident as aforesaid the said Emanuel Redler, as required by the terms of said policy, notified and informed the garnishee and gave garnishee a written statement to the effect that at the time plaintiff sustained said injuries said Nathan Nemirovsky was operating and driving said automobile; . . . thereafter . . . Emanuel Redler verbally informed and advised the garnishee that his previous statement that the said Nathan Nemirovsky was driving said car was false and untrue, and that he, the said Emanuel Redler, and not said Nathan Nemirovsky, was driv-

ing the said car at the time plaintiff sustained said injuries, . . . but . . . declined and refused to furnish garnishee with a written statement . . . and by reason of the conflicting statements so made to garnishee by the said Emanuel Redler concerning said accident and the circumstances thereof as aforesaid, the garnishee declined and refused to defend this action on defendant's behalf, and notified and informed the said Emanuel Redler that it would recognize no liability under said policy.''

Garnishee's reply then further stated:

''That the judgment herein was procured by fraud and collusion between the plaintiff and the defendant herein in this, that the plaintiff and defendant, although knowing that said Nathan Nemirovsky was driving said automobile at the time of said accident, and that the said Nathan Nemirovsky having been killed in said accident, no recovery could be had by plaintiff against the estate of said Nathan Nemirovsky, agreed between themselves, for the purpose of cheating and defrauding the garnishee, to substitute the said Emanuel Redler for the said Nathan Nemirovsky as the driver of said automobile at the time of said accident; . . . that in accordance with said fraudulent agreement and understanding, for the purpose of cheating and defrauding the garnishee herein, plaintiff filed this action against the defendant, in which the plaintiff falsely and fraudulently alleged that the defendant, Emanuel Redler, was driving said automobile at the time of said accident; that the defendant, Emanuel Redler, well knowing that said allegations were false and untrue, and that the said Nathan Nemirovsky, and not the defendant, was driving the said automobile at the time of said accident, did not refute or contest the allegations of the plaintiff as aforesaid at the trial of said action, but, in pursuance of said fraudulent agreement and understanding as aforesaid, permitted and allowed judgment to be taken against him by default in his action, . . . to enforce the collection of the judgment rendered against him in this action against the garnishee under said policy.''

Appellant assigns as error the refusal of her requested instruction in the nature of a demurrer to the evidence at the close of the case. Appellant contends that garnishee's evidence was insufficient to make any jury issue and constituted no defense to her garnishment. Appellant also assigns as error the refusal of an instruction she requested on submission of the case and the giving of an instruction authorizing a verdict for garnishee. However, we find that the condition of the abstract of the record filed by appellant in this court precludes a review on these assignments.

Garnishee has filed a motion to dismiss this appeal because ''appellant's abstract of the record filed herein is insufficient for a complete and proper understanding and determination of the ques-

tions presented for decision upon this appeal." In support of this motion, garnishee has filed "an additional abstract of so much of the bill of exceptions filed in the court below as is necessary to show the insufficiency of appellant's abstract of the record;" but states that "this additional abstract is not a complete abstract of the record or a complete abstract of that part of the record omitted by appellant in her abstract of the record." Section 1028, Revised Statutes 1929, requires "printed abstracts of the entire record." Our Rule 13 provides: "Abstracts shall set forth so much of the record as is necessary to a complete understanding of all the questions presented for decision. Where there is no controversy as to the pleadings or as to deeds or other documentary evidence it shall be sufficient to set out the substances of such pleadings or documentary evidence. The evidence of witnesses may be in narrative form except when the questions and answers are necessary to a complete understanding of the testimony. Pleadings and documentary evidence shall be set forth in full when there is any question as to the former or as to the admissibility or legal effect of the latter; in all other respects the abstract must set forth a copy of so much of the record as is necessary to be consulted in the disposition of the assigned errors."

In Brand v. Cannon, 118 Mo. 595, 24 S. W. 434, this court said: "When a party obtains a judgment of a court of competent jurisdiction in his behalf, the presumptions are all in favor of its validity and the correctness of the means by which it was obtained, and the burden is on one who alleges error to show it. The law of this State has cast upon the appellant, nor the respondent, the *onus* of preparing a printed abstract of the entire record of the cause, which he shall serve on his opponent, and file in this court. . . . If a party, relying upon the provision that his opponent, if not satisfied, shall file a further abstract, can cast the burden on his adversary, by filing a wholly insufficient and garbled abstract, it can readily be seen that the burden will be on the respondent to maintain his judgment, and not on the appellant to reverse it. Moreover, after the respondents have successfully prosecuted their suit to a judgment, there is no principle of justice that would require them to incur the labor and expense of furnishing this court with the information necessary to a proper determination of this appeal. . . . It is natural that counsel should differ as to the materiality of some things, and for that reason the respondents are permitted to supplement the abstract of appellant; but it was never intended that a mere perfunctory performance of this duty should cast the expense on the respondents." This court has been liberal in the construction of its rules and the statute in order to determine cases on their merits whenever there has been a reasonable and substantial compliance with these requirements. It has done so, even if the evidence was not properly abstracted, when

"the abstract is sufficiently clear to present the questions raised." [Moberly v. Watson, 340 Mo. 820, 102 S. W. (2d) 886.] Nevertheless, it has dismissed appeals in recent cases in which there was a palpable violation of Rule 13. [See State ex rel. Consolidated School District v. Cox, 323 Mo. 43, 18 S. W. (2d) 61; Aulgur v. Strodtman, 329 Mo. 738, 46 S. W. (2d) 172; State School District of Kansas City v. Lee, 334 Mo. 513, 66 S. W. (2d) 521; Werminghaus v. Eberle (Mo.), 81 S. W. (2d) 607; State ex rel. Robinson v. Wright (Mo.), 85 S. W. (2d) 561; Payne v. Payne, 338 Mo. 224, 89 S. W. (2d) 665; Bank of Kennett v. Tatum, 340 Mo. 198, 100 S. W. (2d) 475.]

■ Appellant's abstract does not set out any of the evidence in questions and answers. Neither is it stated in the language of the witnesses as his narrative, but it is the narrative of counsel as to what the witnesses said. Such a form might be excused, but counsel depart from even that kind of narrative form to state conclusions as to the meaning of testimony. Examples of such conclusions are, as follows: (Cross-examination of defendant's witness Harrison) "He never interviewed plaintiff or attempted to do so, *although he had adequate opportunity to do so.* . . . *The witness admitted* he had seen said letter in the files of his company and that said letter had been received. . . . (Appellant's testimony in rebuttal) *She is positive* no statement at all was *ever* made in her presence." As to this latter testimony garnishee's additional abstract shows that it actually was, as follows: "Q. Did you hear any such statement made by anybody in your presence to the effect that Nemirovsky was driving the car? A. I heard no statement whatever in my presence."

Much of the testimony is so abbreviated that its meaning and effect cannot be fully comprehended from appellant's abstract. Examples of this are as follows:

(Testimony of defendant's witness O'Donnell as shown by appellant's abstract) "He had told Mr. Shanvet at that time that he felt that since they had previously gotten a statement from Redler signed under oath to the effect that Nemirovsky had been driving the car, he felt that the cooperation clause of the policy had been violated." (Answer of same witness as shown by additional abstract) "I told Mr. Shanvet of this sworn statement by Emanuel Redler, which was taken, I believe, within two days after the accident, which occurred on August 11th. I told him of this statement, I told him of the evidence before the Coroner, and then I told him of the visit by Redler, where Redler had talked to my Mr. Harrison. I told him of that verbal conversation with Mr. Redler, that it had been reported to me, and that I had directed my assistant, Mr. Harrison, to tell Mr. Redler, and, in turn, Mr. Redler had been told, according to Mr. Harrison's report to me, that since he had furnished us in connection with the investigation of the case under the accident policy a certain af-

fidavit and he now wanted to say something opposite to what he said then, that he should please put it in writing. If he didn't swear to it he should put it in writing, and that was, in my opinion, the reason we couldn't defend Mr. Redler in suits brought against him. I told him about conversations with Mr. Moelman, who represented these ladies first, and that I didn't think that the cooperation clause of the policy had been met.''

(Cross-examination of defendant's witness Lawson as shown by appellant's abstract) ''Mr. Redler was the first to get out because he was unwinding the window when the witness got to the machine. Nemirovsky's body was lying across Miss Orenstein's face.'' (as shown by additional abstract) ''Q. And the first you recall is Mr. Redler leaning out there and trying to unwind that window? A. He was trying to unfasten the door, to open the door, but it was wedged and wouldn't open. . . . Q. Now, you say that you saw Mr. Nemirovsky after Redler got out, with his head slumped somewhere near the steering wheel? A. Yes, sir. Q. And his feet near the brake? A. Yes. Q. Where were the girls? A. The two girls had fallen with their heads down toward the brakes. Q. Was he underneath one of the girls? A. I think Miss Essman, her head was down, and then Miss Orenstein, and then Mr. Nemirovsky; it seemed like his body was lying across Miss Orenstein's face.''

(Testimony of Constable Cheetham as shown by appellant's abstract): ''Redler told him, in response to his question regarding how the accident happened, that the other boy was driving.'' (As shown by additional abstract) ''Q. What I want to know is the statement Redler made to you. A. I said, 'How did it happen you didn't get hurt?' He said, 'The other boy, he was driving, and the wheel hit him there, and I was on the outside and I guess the girl saved me. I was sitting with a girl on my lap; that's what saved me, I guess.' ''

Appellant here contends that she was entitled to a directed verdict. The rule is that ''in an action at law if appellant seeks a reversal on the ground that there was no evidence to support the verdict, or that a demurrer to the evidence should have been sustained, all the evidence must be presented.'' [Aulgur v. Strodtman, supra; State ex rel. Guinan v. Jarrott, 183 Mo. 204, 81 S. W. 876.] Appellant not only failed to present ''all the evidence'' in a manner which would comply with Rule 13, but failed to present, in any form whatever, much of the evidence. Some of the omitted matters are hereinafter set forth.

Plaintiff's Exhibit A, a ''certified copy of the finding of the Coroner's jury as to the death of Nathan Nemirovsky'' is not in the abstract, nor is there any statement as to its substance. In a motion to strike garnishee's additional abstract on the ground that it was unnecessary and immaterial (which is overruled), appellant partially

684

states the substance of this exhibit and says "that it is a conceded fact and immaterial." Of course that is not a compliance with Rule 13. Surely if it was conceded, garnishee had the right to have it considered.

In setting out the cross-examination of appellant the following questions and answers are not shown or referred to at all:

"Q. Did you ever talk to your husband about his making a statement that Nemirovsky was driving the car? A. I just had mentioned it to him; I just asked him how it comes, but he doesn't remember.

"Q. He tells you now he doesn't remember? A. He says everything is just a blue to him. He can't recall anything that occurred that evening."

In the cross-examination of the attorney who filed an answer for Emanuel Redler in appellant's suit against him, appellant's abstract contained nothing concerning the following questions and answers:

"Q. You didn't appear at the trial at all? A. That's right. . . . Q. You made no defense at all? A. I did not. . . .

"Q. And neither you nor Redler cared if they did get a judgment, did you? A. That's right."

Appellant's abstract shows that "garnishee re-offered in evidence the statement marked 'Defendant's Exhibit 1,' previously described, and the court admitted it." This statement (Emanuel Redler made it soon after the accident describing in detail the events of the evening and stating that Nathan Nemirovsky was the driver of the car) is not set out and there is no statement as to the substance thereof.

Garnishee introduced in evidence the transcript of the testimony of Emanuel Redler in a suit brought against him by the other occupant of the automobile who survived the accident. Appellant's abstract does not even mention that there was any such evidence in the case. Some of this omitted testimony was, as follows:

"Q. Were you driving at the time of this accident? A. That I can't say; I don't remember. Q. What is that? A. I say I don't remember. Q. You don't know whether you were driving at the time of the accident? A. No, I don't remember. Q. You don't remember whether he was driving or whether you were driving? A. I remember the road, yes. Q. You were not intoxicated, were you? A. No, sir; I don't drink. . . . The Court: One minute. (Q.) Who drove that car at the time of the accident A. I can't answer that question; anything I might say in answer to it might incriminate me. Q. How? A. Any answer I gave to that question might incriminate me. Q. It might incriminate you? A. Yes, sir."

Concerning this latter omission, appellant says: "This was hearsay, not identified by any witness, and shows on its face that it was incompetent, since there was no showing that the witness was out of the jurisdiction; . . . it was not material to any issues or ques-

tions presented for determination on this appeal. It was only a repetition of testimony tending to prove the only two ultimate facts which respondent tried to prove to escape liability in this case, first, that Redler was not the driver of the car involved in the accident; and, second, that he gave garnishee a written statement shortly after the accident to the effect that he was not the driver of the car." Certainly it was not for appellant's counsel to rule the question of admissibility of evidence by leaving it out of their abstract. They must include it and argue its admissibility and legal effect to this court. [See Colorado Milling & Elevator Co. v. Rolla Wholesale Grocery Co. (Mo. App.), 102 S. W. (2d) 681.] All of this omitted evidence was competent and material upon the defenses that there was a conspiracy between appellant and her husband to defraud garnishee (all verbal statements of Redler admitted had been made in appellant's presence); that the judgment relied upon was procured by fraud and collusion between them; and that the co-operation Clause of the policy was violated. Certainly the most extreme form of non co-operation would be to conspire to defraud garnishee by attempting to have a false claim established against it. [As to the defense of non co-operation see Finkle v. Western Automobile Ins. Co., 224 Mo. App. 285, 26 S. W. (2d) 843; Nevil v. Wahl, 228 Mo. App. 49, 65 S. W. (2d) 123; Bauman v. Western & Southern Indemnity Co., 230 Mo. App. 835, 77 S. W. (2d) 496.]

Appellant's counsel took the erroneous view that Redler's conduct in this case could not be anything more than mere technical violation of a policy provision which would not constitute a defense unless garnishee showed that it was prejudiced by failure to comply therewith. Appellant relied upon Cowell v. Employer's Indemnity Co., 326 Mo. 1103, 34 S. W. (2d) 705. In that case, the insurance company, which withdrew after it had assumed the defense of the accident case, offered no evidence in the garnishment proceeding. It contended that it was not liable, because (as it pleaded) the original statement of facts given to it was false, although it had timely notice of the true facts. Here the claim is that the original statement was true and that there was collusion to recover on a false version. There was not only no evidence on the issue of non co-operation in the Cowell case, but there was no affirmative defense made, as here, that the judgment to establish liability of the insured was procured by fraud and collusion between the insured and the person who brought suit against him. Active collusion to defraud is no mere technical violation of a policy provision which might not prejudice the company's rights. There is ample authority that it is a good defense. [Ohio Casualty Co. v. Swan (C. C. A.), 89 Fed. (2d) 719; Storer v. Ocean Accident & Guaranty Co. (C. C. A.), 80 Fed. (2d) 470; Collins Executors v. Standard accident Ins. Co. (Ky.), 185

S. W. 112; Bassi v. Bassi (Minn.), 205 N. W. 947; Rohlf v. Great American Mutual Indemnity Co. (Ohio), 161 N. E. 232; United States Fidelity & Guaranty Co. v. Pressler (Tex.), 185 S. W. 326; see, also, 31 C. J. 460, sec. 60; 14 R. C. L. 63, sec. 21.] No doubt counsel's misconception as to the applicable principles of law in part explains the insufficiency of appellant's abstract.

Appellant's reply brief states: "While there is much talk of 'fraud' and 'collusion' running through respondent's brief, at places boldly charged and at others by *innuendo*, garnishee cannot point out any facts proven, which, by the farthest stretch of the imagination, can warrant any inference of fraud." Appellant will not be heard on such an argument when her abstract fails to bring up so much of the evidence of facts and circumstances which did tend to prove fraud and collusion. Reference to the evidence we have hereinabove set out and discussed, from our examination of the two abstracts filed, shows that there was ample evidence to sustain garnishee's defenses, both of non co-operation and of collusion to defraud, so that there could not be any merit in appellant's assignment as to refusing directed verdict. We also note, concerning the error assigned as to garnishee's instructions, that appellant's instruction submitted the same issue which she says was erroneously submitted by garnishee; and from what we have said herein it is clear that appellant's refused instruction was not proper. We say this parenthetically because as said by Judge LAMM, in Sullivan v. Holbrook, 211 Mo. 99, 109 S. W. 668, "when a cause in an appellate court rides off on a question short of the merits it must needs be a matter of solicitude."

Garnishee's motion to dismiss is sustained and the appeal is dismissed. *Ferguson* and *Bradley*, CC., concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.*, absent.