JAY L. OLDHAM, Plaintiff in Error, v. ANNA K. WRIGHT, JESSIE MC-KAY and LIDA M. NESBITT, Defendants in Error.—85 S. W. (2d) 483.

Division One, July 9, 1935.*

*NOTE: Opinion filed at the September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.

*Jay L. Oldham* for plaintiff in error.

172

*Lathrop, Crane, Reynolds, Sawyer & Mersereau* for defendants in error.

HYDE; C.—This is an action in equity to set aside a deed on the ground that it was made to hinder, delay and defraud plaintiff, 'a judgment creditor. At the close of plaintiff's evidence defendants moved the dismissal of plaintiff's bill on the ground that his evidence showed that he was not entitled to any equitable relief. The court sustained this motion, and entered a judgment dismissing plaintiff's bill and granting defendants certain affirmative relief. Plaintiff has brought the case before this court by writ of error.

Plaintiff's evidence showed that plaintiff had commenced a suit against defendants' grantor Anna K. Wright July 27, 1925, upon her alleged written agreement of March 3, 1918, to pay plaintiff $1200, in monthly payments of $25, for services resulting in obtaining a 99-year lease of certain property belonging to her and also for $350 attorneys' fees in another matter; that Mrs. Wright had filed answer at the September, 1925, term, setting up the Statute of Limitations, want of consideration and other grounds upon which she claimed the agreement was null and void; and that plaintiff had obtained a judgment in this suit for $1765 on December 12, 1929, when Mrs. Wright failed to appear at the December, 1929, term. It was further shown that Mrs. Wright had, on September 22, 1926, conveyed the residence property, in which she lived, to defendants Jessie McKay and Lida M. Nesbitt; that this deed was placed on record on the next day; that this deed stated that its consideration was "one dollar and other valuable considerations;" that it was made subject to an unpaid balance of $2000 on a mortgage given to secure a note for $3500; and that this incumbrance was assumed by the grantees. Mrs. Wright had purchased this property in September, 1923, sub-

ject to this same incumbrance and the consideration was stated in her deed to be $18,000. Plaintiff, after obtaining judgment against Mrs. Wright, had an execution issued and garnishment made thereunder of the Fidelity National Bank, but obtained nothing thereon and the execution was returned "not satisfied." Plaintiff then commenced this suit on March 10, 1930.

Mrs. Wright was sixty-six years old at the time she made the deed to defendants. She died August 6, 1930, and the case was dismissed as to her. The grantees will be hereinafter referred to as the defendants. Defendant Jessie McKay was a first cousin of Mrs. Wright, and had lived with her twelve years prior to the time the deed was made. She was a school teacher, then forty-four years old, and employed in the Kansas City schools at the salary of $2200 per year. Her salary had been increased so that at the time of the trial it was $2900 per year. Defendant Lyda M. Nesbitt was a second cousin of Mrs. Wright. She had been taken by Mrs. Wright when she was six years old and brought up by her. She was thirty-six years old, at the time the deed was made, and was employed as a children's worker in the Presbyterian Church at a salary of $70 per month. At the time of the trial her salary had been increased to $100 per month. Prior to the making of the deed, defendants had lived with Mrs. Wright as members of her family and paid her no board. They bought their own clothes and sometimes bought other things they wanted and paid for tickets when they went places. They were both called as witnesses by plaintiff and their evidence showed that when the deed was made to them the agreement was that they were to care for Mrs. Wright through her lifetime; that Miss McKay, having the largest income, paid the taxes and interest and three-fourths of the grocery bill; that Miss Nesbitt paid the smaller bills; that Mrs. Wright still went to pay the taxes, interest and other bills and the receipts were made in her name; but that defendants always furnished the money. Their evidence further showed that, after assuming the responsibility for supporting Mrs. Wright and paying the interest and taxes, Miss McKay went to school at Columbia University in New York to get a Master's degree in order to increase her earning capacity as a school teacher; that defendants did not know that plaintiff had a suit pending against Mrs. Wright and did not learn of it until after he obtained judgment; that Miss Nesbitt knew that there had been a controversy between Mrs. Wright and plaintiff, but that she thought it had been settled. Defendants' estimate of what it cost them for Mrs. Wright's support was about $600 per year.

After the deed was made, the electric light, water, gas and telephone bills ran along in Mrs. Wright's name and she attended to paying them but defendants furnished this money. Mrs. Wright, however, paid with her own money the houseman who lived over the

garage and prepared their meals, and bought some of her own clothes. Defendants said that Mrs. Wright was allowed to pay all bills because defendants were both busy during the daytime at their occupations, and also because Mrs. Wright had been a long-time resident of Kansas City "it would save her some humiliation" to be allowed to continue to pay the bills, and that "it was to save her embarrassment." Miss McKay said also that Mrs. Wright's financial condition, at the time the deed was made, "was very much reduced from what it had been," but that she had sufficient to pay a claim of $1700 or $1800 at the time she made the deed; and that "she owned some property in Casper (Wyoming), and she had some electric light stock, and she had some Irving-Pitt and something in the bank, . . . about $800 in cash." She had sold the stock and used the money before she died. At the time of the trial, Mrs. Wright's funeral expenses had not been paid and no administration had been commenced on her estate. Mrs. Wright owned the furniture but left no other property. The house had eight furnished rooms, a sleeping porch and third story. Miss McKay valued the place at between eight and ten thousand dollars. Plaintiff had evidence that it had been built only about twelve or thirteen years, and that its value under ordinary conditions was about $15,000 or $16,000. There was $8,000 fire insurance on the house, taken out in 1930 in the name of defendants, which was held by the owner of the first mortgage.

The chancellor erred in sustaining defendants' motion to dismiss plaintiff's bill, at the close of plaintiff's evidence, because plaintiff had made a prima facie showing sufficient to entitle him to equitable relief in the absence of further evidence on the part of defendants. Plaintiff's showing was that the only consideration for the conveyance, except an assumption of a mortgage of from one-fourth to one-fifth of the value of the property, was an agreement for the grantor's future support. This was not, as against existing creditors, a valid consideration for the conveyance of the substantial equity in the property. Several cases considering this question may be found in Merithew v. Ellis, 2 A. L. R. 1429-1433 and 1436; Smith v. Clark, 23 A. L. R. 582, and Consolidated Rendering Co. v. Martin, 64 A. L. R. 790. Many authorities are also exhaustively collated and discussed in annotations following these cases. [Notes 2 A. L. R. 1438, 23 A. L. R. 584; see, also, 12 R. C. L. 546, sec. 70, 27 C. J. 530-31, secs. 214-218.]

These authorities sustain the following propositions:

(1) The effect of such a conveyance is to create a trust for grantor in his own property so that he puts it beyond the reach of creditors and at the same time enjoys the benefit of it himself.

(2) If the conveyance transfers all or such a substantial part of the grantor's property, so that he does not retain sufficient property

to satisfy his existing debts, it is no more valid against existing creditors than a voluntary conveyance.

(3) Even though the grantee acts in good faith and has no knowledge of any indebtedness of the grantor, yet, if the necessary effect of the transaction is to actually hinder and delay creditors, the lack of the grantee's intention to do so will not alone make the conveyance valid so as to prevent creditors from setting the conveyance aside.

(4) If after a conveyance based' upon consideration of future support, the grantee in good faith actually furnishes support in an amount equal to or greater than the value of the property conveyed to him, it becomes an executed valid consideration for the conveyance and creditors cannot set it aside.

(5) If the grantee has acted in good faith, without knowledge of existing indebtedness, and has, after the conveyance, actually furnished support of substantial value, the conveyance is valid to that extent and, while the conveyance may be set aside, the grantee is entitled to a preference in the property over other creditors to the extent of the support furnished by him.

(6) If the grantee has not acted in good faith but has participated with the grantor for the purpose of hindering and delaying his creditors, by attempting to put the property beyond their reach when it is in fact held as a secret trust for the grantor, then, even though support has actually been furnished by the grantee, the conveyance is void and the grantee is entitled to have nothing thereby.

The showing here is that, prior to the time plaintiff commenced this suit, support had not been furnished which would be equal, at the most, to as much as one-half of the minimum suggested value of the equity in the property. Nor was it shown, as defendants contend, that Mrs. Wright remained clearly solvent after this conveyance. When plaintiff made a prima facie showing that the conveyance would hinder and delay creditors, the burden of making a further showing that the value of the property retained was sufficient to prevent it from having that effect shifted to defendants. [27 C. J. 797, sec. 724.] The general statement that she had enough to pay a claim of $1700 or $1800 at the time did not show her obligations or what her actual condition as to solvency was. She had nothing when she died. [See May v. Gibler, 319 Mo. 672, 4 S. W. (2d) 769.] It is now further contended by respondent that Mrs. Wright had a homestead in the property of the value of $3000, which she had the right to convey. [Bank of Versailles v. Guthrey, 127 Mo. 189, 29 S. W. 1004.] However, there was no such claim made in the pleadings or at the trial. It appears that she purchased this place long after plaintiff claims her debt to him was created and there was nothing shown to trace into it the proceeds of any former homestead, existing before the creation of plaintiff's debt. [See Secs. 615, 616 and 618, R. S. 1929;

see, also, Daniels v. Peck, 221 Mo. App. 877, 288 S. W. 84; Poplar Bluff Trust Co. v. Bates, 224 Mo. App. 636, 31 S. W. (2d) 93.] If defendants desire to so show upon retrial, they should plead and prove that Mrs. Wright had a homestead right in the property which was entitled to priority over plaintiff's claim. Likewise, if they desire affirmative equitable relief, they should also amend their answer so that it will clearly show what relief they claim that they are entitled to have.

■ It is further contended that plaintiff was guilty of laches because he did not commence this suit until about three and one-half years after the conveyance had been made or recorded. However, the deed did not state that its consideration or any part of it was future support and there is no evidence that plaintiff knew this. [See Walther v. Null, 233 Mo. 104, 134 S. W. 993.] In fact, the continuation of the same outward appearances to save Mrs. Wright embarrassment would tend to keep him and others from knowing it. Moreover, plaintiff did have a suit commenced against Mrs. Wright prior to the time the deed was made but did not obtain judgment for some time thereafter. He could not very well bring a suit to set aside this deed until his disputed claim was reduced to judgment. He might have, perhaps, proceeded by attachment, but this is a somewhat dangerous remedy to attempt on such grounds before judgment and we would not hold that he was guilty of laches because he did not do so. ■ Defendants say that Mrs. Wright had a meritorious defense to the suit upon which plaintiff obtained judgment against her, but they cannot attack plaintiff's judgment therein collaterally in this case. It could have been attacked directly, at the time plaintiff brought this suit, by suit in equity, or if, as now contended, the record did not show pleadings making up issues upon which judgment could be rendered, there was plenty of time to raise that point by obtaining review on a writ of error. The court might also have been asked to set the judgment aside before the judgment term expired. Execution was issued and a levy made before the commencement of the next term, after the judgment term. Mrs. Wright seems to have preferred to rely upon the conveyance as a defense to the execution, rather than to rely upon the defense to the suit stated in her answer. If plaintiff's judgment is without merit, this is indeed a hard case, but if so, it is partly due to neglect, of either defendants or their grantor, that the matter is in such a condition. "However hard the case, we may not spoil the symmetry of the law. . . . 'It is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law.'" [Seilert v McAnally, 223 Mo. 505, l. c. 520, 122 S. W. 1064.] Since the record does tend to show that, even if the conveyance must be set aside, de-

fendants may be entitled to some rights in the property, we think they should have an opportunity to fully develop these matters.

The judgment is reversed and the cause remanded. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.