JAY L. OLDHAM, APPELLANT, v. JESSIE McKAY, LIDA M. NESBITT, AND FIDELITY NATIONAL BANK & TRUST CO., OF KANSAS CITY, A CORPORATION, RESPONDENTS.—138 S. W. (2d) 735.

Kansas City Court of Appeals. January 8, 1940.

*Jay L. Oldham, pro se.*

*Bowersock, Fizzell & Rhodes* for respondent, Fidelity National Bank and Trust Company of Kansas City, as Trustee.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau* for respondents, Jessie McKay and Lida M. Nesbitt.

KEMP, J.—This suit, as originally instituted on March 10, 1930, was an action to set aside a deed on the ground that it was executed for the purpose of hindering, delaying and defrauding plaintiff, a judgment creditor.

Upon the first trial of the case, and at the close of plaintiff's evidence, defendants moved the dismissal of plaintiff's bill on the ground that the evidence showed that he was not entitled to any equitable relief. The trial court sustained the motion and entered judgment dismissing plaintiff's bill and granting defendants certain affirmative relief. On writ of error the matter came before the Supreme Court where the judgment was reversed and the cause remanded. [Oldham v. Wright et al., 85 S. W. (2d) 483.]

The record discloses that on July 27, 1925, this plaintiff had sued Anna K. Wright in the Circuit Court of Jackson County, Missouri, to

recover $1200 on a contract dated February 17, 1918, and also for $350 attorney's fees in another matter and for interest. On December 12, 1929, defendant Wright failing to appear, plaintiff obtained judgment for $1765. No motion to set aside the judgment was filed and no appeal therefrom was taken. While said suit against Mrs. Wright was pending, and on September 22, 1926, Mrs. Wright conveyed the residence property in which she lived to Jessie McKay and Lida M. Nesbitt, defendants in the instant suit. The deed was recorded the following day. The consideration recited therein was "One Dollar and other valuable consideration." There was a deed of trust on the property securing a note then reduced to $2000, which obligation the grantees assumed and agreed to pay.

On February 20, 1936, pending the instant action, and following the decision of the Supreme Court reversing the judgment and remanding the case, the Fidelity National Bank and Trust Company, trustee named in said deed of trust, foreclosed the same (the grantees in the deed had defaulted in payment of taxes and interest following the Supreme Court decision), and, after paying from the proceeds of the sale the debt secured thereby and the expenses incident to the foreclosure, had a surplus in the amount of $1456.60. On the day of the sale plaintiff served notice on the trustee of his claim to the surplus fund and the facts on which he based same. On February 26, 1936, McKay and Nesbitt, defendants, served notice on the trustee that they claimed said surplus fund, stating as ground therefor, that they were the owners of the property sold under said foreclosure.

After the foreclosure sale, and on April 25, 1936, plaintiff filed in the instant suit an amended bill whereupon trial was had, which amended bill proceeded upon the theory that Anna K. Wright, a judgment debtor, executed and delivered said deed to Jessie McKay and Lida M. Nesbitt, defendants herein, for the purpose of defrauding plaintiff, her judgment creditor; that defendants as grantees accepted said conveyance in aid of that purpose; that thereafter and pursuant to said design, default was made as to taxes and the mortgage note and deed of trust were foreclosed. Plaintiff further alleged that the surplus over the mortgage debt and expenses of the foreclosure stood in the place of the equity in the real estate. Whereupon, plaintiff prayed defendants be adjudged to have no interest in the surplus fund arising from the foreclosure sale and that plaintiff have judgment against the trustee for $1456.60, with interest from April 25, 1936, and for costs.

The answer of defendants, McKay and Nesbitt, tendered the general issue and alleged that they accepted the deed, dated September 22, 1926, in good faith for a valuable consideration, to-wit, a written agreement to support the grantor for her lifetime, which agreement they had fully performed, (Mrs. Wright, the grantor, having died August 6, 1930, following which event this case was dismissed as to

her), and the assumption of the debt of Mrs. Wright secured by the deed of trust.

Mrs. Wright had purchased the property in September, 1923, subject to this same secured note, then in the principal amount of $3500. The consideration in the deed of conveyance to Mrs. Wright was $18,000. Hard upon the event of plaintiff obtaining judgment against Mrs. Wright, he had execution issued and garnishment made thereunder of the Fidelity National Bank, all of which was ineffective.

At the time Mrs. Wright deeded her residence property to defendants, McKay and Nesbitt, in September, 1926, she was sixty-six years of age. Defendant Jessie McKay was a first cousin of Mrs. Wright and had lived her in her house for twelve years prior to the time the deed was executed. She was a teacher in the Kansas City school system and at the time of the conveyance to her she was forty-four years of age. She had been drawing a salary of $2200 per year, which, at the time of the first trial of this case, had been increased to $2900 per year. She testified that she and Miss Nesbitt executed the written agreement to support Mrs. Wright the remainder of her life and to assume the mortgage indebtedness as the sole consideration for the deed. Miss McKay, having a larger income than her co-grantee, Miss Nesbitt, paid the taxes, interest and three-fourths of the grocery bill. When she first came to live with Mrs. Wright she "had looked upon her . . . as a woman of wealth," but at the time of the conveyance she knew that Mrs. Wright's financial condition was very much reduced from what it had been and that she "was just in very average circumstances." In her deposition she had testified that Mrs. Wright was not in comfortable circumstances at the time she made the deed—that she had suffered "serious financial troubles."

Defendant, Lida M. Nesbitt, was a second cousin of Mrs. Wright. Mrs. Wright had taken Miss Nesbitt into her home when she was six years old. She had continued to live there as her daughter from that time until Mrs. Wright's death. Miss Nesbitt was thirty-six years of age at the time the deed was executed and was then employed as a paid church worker at a salary of $70.00 per month, which, in 1928, had been increased to $100.00 per month. Prior to the making of the deed both Miss Nesbitt and Miss McKay lived with Mrs. Wright in Mrs. Wright's home as members of her family. These defendants had bought their own clothes and had occasionally purchased something that they especially wanted for the table, and when they went to lectures or other entertainments those defendants paid for the tickets. Beyond this, they did not, prior to the deed, contribute to the family expense. Neither ever paid anything for board or room as such. Mrs. Wright continued to retain William, the houseman, and to pay him his wages of $5.00 per week out of her own funds. She also continued to buy some of her clothing out of her own funds. The telephone, electric light, water and gas contracts remained in

Mrs. Wright's name and she continued to pay these bills and, also, the interest on the loan, the taxes and other bills. Defendants testified, however, that they furnished the money therefor, introducing numerous checks in support thereof. Defendants, in explanation of the reason for this arrangement, said that they felt that by permitting Mrs. Wright to pay these bills and carry on as she had previously, she would be saved the humiliation of her reduced circumstances. Each of these defendants denied any knowledge of Mrs. Wright's indebtedness to the plaintiff at the time of the execution and delivery of the deed. Miss Nesbitt testified that she knew of some controversy between Mrs. Wright and the plaintiff, but throught it had been settled. Miss McKay knew of some controversy, but testified she didn't know its nature and didn't know that plaintiff had ever claimed Mrs. Wright was indebted to him. Both testified they had never heard of Mr. Oldham's suit against Mrs. Wright until the bringing of the instant suit on March 10, 1930, in which they were made parties defendant.

These defendants testified that Mrs. Wright, at the time the deed was made, owned a lot in Casper, Wyoming, and Miss Nesbitt thought she owned seven or eight shares of Electric Light stock and five $100 shares of Irving-Pitt stock, and that she had, at that time, about $800 in the bank. There was no testimony, however, as to Mrs. Wright's then existing obligations. At the time of her death she owned practically nothing—only $25 in the bank and some household furniture.

The residence conveyed was an eight-room house and sleeping porch with two baths upstairs and a toilet below. There was a garage with living quarters. When it was purchased by Mrs. Wright in 1923, the consideration named in the deed was $18,000. The lowest estimate of its value at the time of the deed to the defendants was their own estimate of about $8000. From plaintiff's evidence it would appear that its value was from $15,000 to $16,000. A policy of fire insurance taken out on these improvements in 1930 was for $8000.

As to the question of the knowledge of the defendants of plaintiff's claim against Mrs. Wright, plaintiff testified that prior to this transfer he had gone to Mrs. Wright's home and discussed with Mrs. Wright her indebtedness to him in the presence of Miss Nesbitt, and that he had met Miss McKay on a downtown street prior to the execution of said deed, and had there discussed this matter with her. This was denied by the respective defendants.

Both Miss Nesbitt and Miss McKay testified that they had discussed with Mrs. Wright the question of the proposal of deeding the residence property to them in consideration for their agreement to support her for life and had discussed it between themselves, but they had never seen the written contract of support prior to the time of the execution of the deed and the contract and that they did not

know who drew either of these instruments, and had never had any discussion with Mrs. Wright or anyone else about the preparation of this contract. It appeared in the evidence that these instruments were prepared at the instance of Mrs. Wright by the firm of attorneys who have been from the beginning of this suit, and are now, representing these defendants in the instant case, and further that, at the foreclosure sale the property was purchased by a member of the same law firm.

Following the foreclosure sale of the property, these defendants have continued to live in said residence property, paying therefor a rental of $25.00 per month. These defendants each deny, however, that the purchaser was acting on their behalf in purchasing the property, or that they have any interest in the property and deny that there has ever been any arrangement between them and the purchaser for their subsequent acquisition of the property.

## Opinion.

Except as to events occurring subsequent to the Supreme Court decision in this case, it appears that the evidence before the Supreme Court was substantially the same as the evidence in the second trial which is now before us. In reversing the judgment and remanding the cause the Supreme Court laid down six legal propositions applicable to the conveyance of the property in consideration of future support. [Oldham v. Wright et al., 85 S. W. (2d) 483, 484.] Propositions five and six afford a complete guide for the determination of this case and are as follows:

"(5) If the grantee has acted in good faith, without knowledge of existing indebtedness, and has, after the conveyance, actually furnished support of substantial value, the conveyance is valid to that extent and, while the conveyance may be set aside, the grantee is entitled to a preference in the property over other creditors to the extent of the support furnished by him.

"(6) If the grantee has not acted in good faith but has participated with the grantor for the purpose of hindering and delaying his creditors, by attempting to put the property beyond their reach when it is in fact held as a secret trust for the grantor, then, the conveyance is void and the grantee is entitled to have nothing thereby, even though support has actually been furnished by the grantee."

After holding that the trial court erroneously dismissed plaintiff's bill for want of equity and apparently in explanation of remanding the cause, the Supreme Court said:

"Since the record does tend to show that, even if the conveyance must be set aside, defendants may be entitled to some rights in the property, we think they should have an opportunity to fully develop these matters."

The court had previously said:

"If defendants desire to so show upon retrial, they should plead and prove that Mrs. Wright had a homestead right in the property which was entitled to priority over plaintiff's claim. Likewise, if they desire affirmative equitable relief, they should also amend their answer so that it will clearly show what relief they claim that they are entitled to have."

From this it would seem that the Supreme Court must undoubtedly have been of the opinion that evidence touching the question of the good faith of the grantees was not of such character that it must necessarily be resolved against said grantees, else there would have been no purpose in remanding the cause. The court had already held that "plaintiff had made a *prima facie* showing sufficient to entitle him to equitable relief in the absence of further evidence on the part of defendants." Plaintiff's showing was that the only consideration for the conveyance, except an assumption of a mortgage of approximately one-fourth of the lowest estimated value of the property, was an agreement for the grantor's future support. This was not, as against existing creditors, a valid consideration for the conveyance of the substantial equity in the property. [Oldham v. Wright, *supra.*]

If the Supreme Court had been of the opinion that the defendants could have no equity to be adjudged, it would not have remanded the cause with the suggestion that "if they desire affirmative equitable relief they should amend their answer so it will clearly show what relief they claim they are entitled to have."

The chancellor, upon the second trial, found that the defendants, McKay and Nesbitt, following the making of the deed, made expenditures on behalf of Mrs. Wright during the remainder of her life in conformity with the provisions of the contract for support and that such expenditures were made by them in good faith without knowledge of any existing indebtedness of their grantor and that the amount of the expenditures so made pursuant to the terms of the contract aggregated $849.10; that defendants "thereby acquired a right, lien, and preference in the aforesaid property now represented by the fund in the possession of the Fidelity National Bank and Trust Company, Trustee, which right, lien and preference is prior and superior to the claim of plaintiff or other creditors and should be satisfied out of or to the extent of said fund, . . ."

There were a number of circumstances as well as direct testimony of the plaintiff, which would have amply supported a finding by the chancellor that the grantees *did* have knowledge of plaintiff's claimed indebtedness, notwithstanding their categorical denial of this fact.

While it is undoubtedly the duty of the appellate court, in an equity case, to pass upon the facts *de novo*, it is also true that where the evidence is conflicting and where the weight of the evidence is not definitely on one side or the other, an appellate court will ordinar-

ily defer to the findings of the chancellor—this because the trial court has an opportunity, which an appellate court does not have, of observing the witnesses and their appearance and demeanor on the stand and is, therefore, in a better position to assess the weight and credit to be given to the testimony of the respective witnesses than is an appellate court with only the cold record before it. [Hunnell v. Zinn, 184 S. W. 1154, l. c. 1157; Snow v. Funk, 41 S. W. (2d) 2, l. c. 4.] We are unable to say that the evidence tending to show knowledge on the part of the defendants of the existence of the indebtedness of the grantor to the plaintiff herein prior to the time of the institution of the instant suit, does so clearly outweigh the positive testimony to the contrary as to warrant our interference with the findings of the chancellor. With the facts standing as determined by the trial court the Supreme Court has ruled in the previous appeal of this case that a "grantee is entitled to a preference in the property over other creditors to the extent of the support furnished by him." The chancellor has correctly applied this principle to the facts as found by him.

Appellant vigorously contends that the six propositions of law stated in the opinion of the Supreme Court in this case were merely *obiter dicta* because not made in response to the issues raised by the record and considered by the court. In this, we think, the appellant is clearly mistaken. The Supreme Court announced these rules of law in response to the facts in this particular case, rules applicable to the alternative facts that might be found by the chancellor on a retrial of the case. Furthermore, in Moberly v. Watson, 340 Mo. 820, the Supreme Court quotes said proposition five from the decision in Oldham v. Wright, *supra,* and treats it as the established law in this State as primarily announced in the Oldham case.

The appellant urges that the court abused its discretion in taxing the costs against the fund. The court decreed that the costs should first be paid out of the fund and that as to the balance, the defendants, McKay and Nesbitt, had a prior right and lien to the extent of $849.10, and that plaintiff was entitled to the balance. This, of course, had the effect of putting the entire burden of costs upon the plaintiff. While, as a general rule, a plaintiff who prevails in an equity suit is entitled to have his costs, nevertheless, it is uniformly held that in an equity case a court has a rather broad discretion in determining who shall bear the burden of costs. This is particularly true where there are several issues, and some are found in favor of plaintiff and some in favor of the defendant. A trial court's determination of this question will not be disturbed by an appellate court, short of an abuse of discretion. [Walton v. Walton, 19 Mo. 667, l. c. 668; Turner v. Johnson, 95 Mo. 431, l. c. 453; Bender v. Zimmerman, 135 Mo. 53, l. c. 58; McDermeitt v. Keesler, 240 Mo. 278, l. c. 290.] We think it an equally sound and well recognized rule that while this dis-

cretion is reasonably broad, it does not contemplate arbitrary or capricious action. It is a legal discretion that must be guided by sound equitable principles considered in the light of the facts of each particular case. The result, in an assessment of costs wherein the general rule is departed from, when examined in the light of all the circumstances, must embody some justification in equity and good conscience, otherwise there is a manifest abuse of discretion which warrants the intervention of an appellate court. This idea was given clear expression by the Supreme Court of Wisconsin in Spengler v. Hahn, 95 Wisc. 472. Referring to a section of the Wisconsin statutes providing that:

"in all equitable actions, costs may be allowed or not to any party, in the discretion of the court,"

that Court said:

"Such discretion, however, is not to be exercised arbitrarily, or to suit the caprice of the presiding judge, but is governed by some rules which have become well established by long-settled practice, among which is *prima facie* the prevailing party is entitled to full costs. Such rule should not be departed from without some special circumstance existing reasonably sufficient to vary it, and requiring such departure to the end that justice may be done between the parties. . . . While the exercise of judicial discretion in such cases necessarily must have a wide range, and not be called in question except for manifest abuse, in the foreclosure of a mortgage, where the parties have contracted for the allowance of solicitor's fees in addition to taxable costs, it requires a very strong case against such allowance, on equitable principles, to justify a total denial of costs and solicitor's fees as well." [See, also, Penix v. Pumphrey, 125 Ark. 332.]

Considering all the circumstances in the instant case, we are of the opinion that what amounted in the decree to an assessment of all the costs against the plaintiff does violence to equitable principles and, in a legal sense, constitutes an abuse of discretion.

There is nothing in the record that can fairly give rise to the slightest suggestion that plaintiff did not act upon reasonable grounds, and in good faith, in instituting this suit, in prosecuting his appeal to the Supreme Court following the dismissal of his petition at the first trial, and in continuing to prosecute the case following the Supreme Court opinion.

In this suit, plaintiff sought to set aside the deed upon the ground that the property herein described was fraudulently conveyed to the defendants, McKay and Nesbitt, for the purpose of hindering and delaying creditors. In this the plaintiff, by the decree of the trial court, has properly prevailed.

Furthermore, following the Supreme Court decision from which the above mentioned result would seem almost necessarily to follow, de-

fendants continued to assert their claim to *all* the proceeds of the foreclosure sale. While, in the light of defendants' evidence, their action in this respect can be subject to no criticism, nevertheless the plaintiff, in the face of this position, was compelled to press his suit wherein he has prevailed in his claim to this fund in substantial part.

Under all the circumstances in this case, and particularly in view of the fact that each of the parties to this suit has sustained in part their respective claims to the fund in question, we are of the opinion that an assessment of all the costs, either directly or in effect, against the plaintiff is wholly lacking in any principle of equity and works such a hardship upon plaintiff as to constitute, in a legal sense, an abuse of discretion. We feel that the imposition upon each of the parties of the burden of the payment of one-half of the costs out of the respective amounts awarded to them, would represent an equitable determination of this question.

Plaintiff makes the further contention that the court did not have jurisdiction to allow the Trustee $50.00 for the services of its at-torney. The Trustee was a disinterested holder of the fund, upon whom notice had been served by each of the parties of their respective claims to the fund. Had the Trustee acceded to the demands of either party, it would have incured a personal liability, as the result of this action demonstrates. Under such circumstances, the Trustee was clearly entitled to resort to the equitable remedy of interpleader in order to discharge its liability. The law is clear that the Trustee was entitled to recover its costs and counsel fees. [Grooms v. Mullett, 133 Mo. App. 437, 113 S. W. 683; Woodmen of the World v. Wood, 100 Mo. App. 655, l. c. 659, 75 S. W. 377.] The fact that the inter-pleader action was not tried and determined prior to the trial of the issues raised by the petition and answer does not affect the substantial rights of the litigants. The parties, without objection, tried all of the issues at the same time and none of them can now complain that the course there pursued was not a proper one. [Farmers & Laborers Co-Op. Ins. Assn. v. Bank of Adrian County, 227 Mo. App. 1068, 1073, 56 S. W. (2d) 606.]

The chancellor found that the defendants were entitled to have $849.10 of the funds in the hands of the Trustee, and found, in effect, that plaintiff was entitled to have $607.50 of said fund, but that the then costs and attorney's fee to interpleader, aggregating $147.05, should first be paid from the fund, thus in effect decreeing that all of said costs should be paid out of the portion of the fund awarded to the plaintiff, thereby producing a result, as to the assessment of costs, which we have held to be inequitable and not within sound judicial discretion.

The judgment is reversed and the cause remanded with directions to the trial court to enter a decree whereby, out of the funds in the hands of the Trustee, the plaintiff shall be awarded the sum of

$607.50 and the defendants shall be awarded the sum of $849.10, each of said sums so awarded to be subject, however, to the prior payment therefrom of one-half the court costs, including the $50.00 attorney's fee to the Trustee. All concur.