Lenore C. PEHLE et al., (Plaintiffs)

v.

Horace G. BEEDLE et al., (Defendants).

Lake Charles Memorial Park, Inc., (Defendant) Respondent,

Harry J. Brusselback & Company, (Movant) Appellant.

No. 31550.

St. Louis Court of Appeals.

Missouri.

June 15, 1965.

Rehearing Denied July 13, 1965.

Forrest M. Hemker, St. Louis, for defendant Horace Beedle, decd.

Henry C. Hughes, St. Louis, for defendant Robert W. Maysack.

Biggs, Hensley, Curtis & Biggs, Ward Fickie, St. Louis, for defendant-respondent, Lake Charles Memorial Park, Inc.

Rader & Love, Edwin Rader, Clayton, for movant-appellant, Harry J. Brusselback & Co.

RUDDY, Presiding Judge.

Harry J. Brusselback, an accountant, was appointed by the trial court to conduct an audit of sales cards of Lake Charles Memorial Park, Inc., a corporation. His motion for an allowance of compensation for his services, to be taxed as costs, was denied by the trial court and he has appealed to this court.

The proceeding out of which this appeal arose began with the filing of an original petition by the plaintiffs wherein they sought equitable relief concerning the management and handling of the affairs of the Lake Charles Memorial Park Cemetery. In their prayer plaintiffs sought an accounting for all moneys and properties which should, according to them, have been deposited in a perpetual care fund. Plaintiffs also sought the appointment of a receiver to take over the business and affairs of the defendant corporation, Lake Charles Memorial Park, Inc., and asked for other relief. Thereafter, a supplemental petition was filed by the plaintiffs. Following this filing, the original petition was amended by the plaintiffs. Timely answers were filed by the corporate defendant and by the individual defendants.

Organizational and historical data alleged in the petition disclosed that Lake Charles Cemetery, sometimes referred to as Lake Charles Memorial Park, is located in St. Louis County, Missouri. At the time the petition was filed the record owner of the land on which the cemetery was located was Lake Charles Memorial Park, Inc., a Missouri corporation. This corporation was the manager and operator of the cemetery. There also existed at the time the petition was filed and at all times since the origin of the cemetery, a pro forma decree corporation known as Lake Charles Memorial Park, whose members were the owners of lots in the cemetery. The original operating company of the cemetery was the Carlton Securities Company, a Massachusetts trust, which was involved in a receivership action and the real estate comprising the cemetery was sold under foreclosure proceedings.

On October 14, 1922, Carlton Securities Company, as owners and operators of the cemetery, entered into a written agreement wherein, among other things, the trust agreed to turn over to the Lake Charles Memorial Park, a pro forma decree corporation, five percent of all lots for the sole use and benefit of the said pro forma decree corporation and that when the said five percent of the lots was sold, the cash returns therefor were to be kept in a separate fund for the perpetual care of the cemetery. Carlton Securities Company further agreed that five percent of the sales receipts of the remaining 95% of the lots in the cemetery would likewise be turned over to the pro forma decree corporation for the perpetual care fund.

Following the foreclosure proceedings, heretofore referred to, the real estate was acquired by a newly formed corporation, Belleview Acres, Inc., whose name was later changed to Lake Charles Memorial Park, Inc., the corporate defendant herein. The named individual defendants were at one time or another officers and directors of the management corporation or of the pro forma decree corporation.

On April 30, 1959, while the plaintiffs' action was pending, the court, among other orders made at the time, made the following order:

"By consent of parties, Harry Brusselback appointed *to conduct audit of sales cards* of Lake Charles Memorial Park, Inc. to determine amount of completed sales."

A memorandum to the same effect signed by the attorneys for all of the parties was filed at the time the aforementioned order was made and said memorandum was approved by the trial judge of the Circuit Court of St. Louis County.

On March 31, 1961, a stipulation of settlement was filed signed by all of the attorneys for the parties, and with it a contract was filed setting out the terms of the agreed settlement. The contract of settlement is very lengthy and it is only necessary to recite such parts as we feel have a bearing on and are pertinent to the "amended motion of Harry J. Brusselback and Company for a court order taxing as costs the sum of $1437.50 in favor of movant."

Paragraph 18 of said contract provides:

"The company (Lake Charles Memorial Park, Inc.) agrees to meet its obligations in respect to all previously entered into 'pre-need' contracts of every kind as they mature. The obligation of the Company to make contributions to the perpetual care fund on account of 'pre-need' sales heretofore made is included in the accounting of the Brusselback Report and is settled by this agreement. * * *."

On the same day the trial judge entered a decree in accordance with the stipulation and contract "for the purpose of finally determining and adjudicating all issues in this action."

Paragraph 9 of the decree provides:

"That by the receiver's deed of June 1, 1934 the purchaser at the receiver's sale and subsequent grantees, including Lake Charles Memorial Park, Inc., assumed the performance of the October 14, 1922, agreement set out in para-. graph 4 hereof; that defendant, Lake Charles Memorial Park, Inc., by a supplement to said agreement on June 6, 1939, agreed to allot 25% of the net sales price or lots sold until the perpetual care fund provided for in the October 14, 1922 agreement reached a minimum requirement of $3750.00 per acre."

Thereafter, the decree showed that there was to be paid to the pro forma decree corporation cash and note obligations secured by a deed of trust having a value in the aggregate of approximately $58,500, together with an allotment to the pro forma corporation of 5% of all of the lots comprising the platted portion of Lake Charles Memorial Park Cemetery, which lots were to be agreed upon and transferred in accordance with the contract approved by the decree. The decree further shows that the attorney for the plaintiffs had requested the payment of $7500 as and for his attorney's fee for services rendered, all of which was agreed to in the contract subject to the approval of the court. The court in its decree approved the payment to said attorney of the sum of $7500. The contract of the parties and the stipulation were approved by the court and made a part of the decree. The court further decreed "that the cost of this action be against defendant, Lake Charles Memorial Park, Inc."

Thereafter, Harry J. Brusselback, accountant, filed a motion for a court order directing payment for services rendered pursuant to the appointment of the court. In his motion movant alleged that in accordance with his employment and instructions he made an "audit of the books and records respecting sales of lots in Lake Charles Memorial Park for the periods from the beginning of the receivership sale in 1934; from 1934 to 1949 and from 1949 to date." He alleged that the fair and reasonable compensation for the work performed is the sum of $1800 and that there has been paid thereon by way of partial payment the sum of $362.50, leaving a balance due of $1437.50 for which sum he prays judgment with interest of $301.88 to be taxed as costs in favor of said movant.

The aforesaid motion of Harry J. Brusselback was heard by the court on Novem-

ber 30, 1962. The only witness was movant, Harry J. Brusselback, Jr., who testified that he was a certified public accountant. He said that some time in March of 1959 he was contacted by Mr. Berthold and subsequent to that time he met with Mr. Berthold and Mr. Becker and was told the nature of the job that was going to be offered him. Thereafter, he was asked by Mr. Becker to appear in court on April 30, 1959. On that date he appeared before Judge Noah Weinstein and after a conference with the Judge and Mr. Ward Fickie (attorney for the corporate defendant) and after being questioned by Judge Weinstein as to his qualifications, he was appointed by the court and the order heretofore referred to was entered. On the day of his appearance in court, namely, April 30, 1959, he was handed a letter dated April 28, 1959, written by Henry C. Hughes, an attorney representing one of the individual defendants, to Mr. William J. Becker, attorney for the plaintiffs. The pertinent part of this letter is as follows:

"This will inform you that I have conferred with Mr. Ward Fickie, attorney for Lake Charles Memorial Park, Inc., and Mr. Forrest Hemker, attorney for Horace Beedle, respecting the suggestion that Harry Brusselback, C.P.A. of Clayton, Missouri, be engaged to make an audit of the books and records respecting sales of lots in Lake Charles Memorial Park for the periods from the beginning of the receivership sale in 1934; from 1934 to 1949 and from 1949 to date to ascertain the completed sales for the periods and determine 5% thereof. Such information would be useful to enable counsel for the respective parties to give appropriate consideration to the settlement heretofore proposed. * * "

He said this letter was given to him on April 30, 1959, when he appeared before Judge Weinstein. He said that he was also told on the date of his appointment to take further instructions from the attorneys. He was asked: "Did you do that" and he answered, "That I did. THE COURT: Did I designate the attorneys? THE WITNESS: I don't recall, Judge; but I believed it was Mr. Becker. At any rate, he was the one I did talk to after that. THE COURT: You didn't talk to Mr. Fickie? THE WITNESS: No."

The witness testified that he made three separate reports on the results of his audit. The first report was made on May 29, 1959, consisting of 19 copies which he delivered to Mr. Becker and he assumed that Mr. Becker handled the distribution of the copies to the various parties involved. At this point, in the testimony of the witness, Mr. Ward Fickie representing the corporate defendant admitted that he received copies of the report. Attached to the report was a schedule which reflected a recapitulation of the sales, separated into periods as requested with computations of amounts due the "Perpetual Care Fund" in accordance with agreements, and records of minutes of the association. These minutes showed that pursuant to the agreement of April 14, 1922, 5% of all lot sales was due the Perpetual Care Fund from that date forward. The minutes showed as of June 6, 1939, that the amount to be allotted was amended to 25% "this agreement to be in full force and effect until the Perpetual Care Fund shall have reached a minimum requirement of $3750 per acre." This report showed the sales separated into periods with the sales from October 14, 1922, to June 3, 1939, computed at 5% to show the amount due the Perpetual Care Fund and all sales thereafter computed at 25%. After making this first report the witness said that because the instructions he had received were not clear enough to proceed, he asked Mr. Becker what he should do and Mr. Becker suggested that he should write to the Judge for clarification. On July 16, 1959, the witness wrote to the Honorable Noah Weinstein, Judge, in which letter he requested clarification of instructions as to breakdown of periods for the purpose of computing interest on the balance due the Perpetual Care Fund. In the letter he pointed out that Mr. Becker hesi-

tated to instruct him in this respect and pursuant to Mr. Becker's instructions he was writing the letter to the Judge of the court. In his letter he requested instructions on other matters. Copies of this letter sent to the Judge of the court were mailed to all of the attorneys in the case. Witness testified that he received no reply to his letter of July 16, 1959, to the Judge of the court and that he did not confer with said Judge subsequent to the date of his letter. Not hearing from the Judge of the Court or from the attorneys in the case, he said he conferred with Mr. Becker and as a result of this conference he prepared and delivered his second report dated July 31, 1959. This report showed the total sales by periods, similar in this respect to the first report, and showed the computation of 5% on the total sales, together with a computation of interest, and sales allotted to the Perpetual Care Fund, together with interest on said sales. A third report was made dated August 7, 1959, which showed the total sales by periods, the same as in the previous reports, together with the computation of said sales at 5%.

The witness identified an exhibit which showed the number of hours spent by him and by other members of the accounting firm in the audit and the preparation of the reports. The total bill amounted to $1800 which included expenses of $127.65. He stated that the charges made were fair, reasonable and proper in the auditing business. It seems that $362.50 had been paid on the bill, which left a balance due of $1437.50.

In his cross-examination by the attorney for the corporate defendant the witness was asked, "Your instructions contained in this letter (April 28, 1959) said to determine the completed sales during specified periods of time and five percent thereof. When were these instructions changed and by whom, and under what circumstances?" and he answered, "Well, since these periods were not definite, I asked Mr. Becker to give me more definite instructions as to

exactly what periods were to be covered, and he did." The witness said that it was his understanding at the time of the hearing, April 30, 1959, that his instructions were to come from Mr. Becker, since he and Mr. Becker were located in Clayton "and handy to each other." He said that he received no instructions from the other attorneys. The witness admitted that "technically" the first report did not show a computation of 5% of the total sales, however pointing out that the report did show the total of all sales for the periods requested.

On redirect examination the witness testified that none of the attorneys, prior to the day of the hearing, had ever complained to him about not following instructions, nor did any of the attorneys or the parties contend that the figures were inaccurate. In a colloquy between the attorney for the corporate defendant and the court the attorney admitted that the witness had determined the sales, but that he also determined 25% thereof "which was absolutely not in accord with the instructions." The court then asked "May I ask you this: The basic figures that he used to arrive at his result would be the same whether you multiplied by 25% or 5%? Mr. Fickie (attorney for corporate defendant): That is correct, sir." Thereafter, the court interrogated the witness and in the course of its interrogation the witness said that Mr. Becker was not his attorney and that he did not feel that his primary obligation was to Mr. Becker in conducting the audit. He told the court that his primary obligation was to the court and everyone else involved. He told the court in the course of his interrogation that, "I understood I was to receive my instructions from Mr. Becker through the Court."

Thereafter, the court entered an order denying the motion. The court in its order said:

"* * * the Court finds that the purposes for which said movant was appointed on April 30, 1959, 'by consent of parties' to conduct an 'audit of sales

cards of Lake Charles Memorial Park, Inc., to determine amount of completed sales' was not accomplished because of the intervention of the then attorney for plaintiffs; * * *"

Respondent, Lake Charles Memorial Park, Inc., contends that appellant, movant, has not complied with Civil Rule 79.03, V.A.M.R., because movant failed to file a motion for new trial based upon the trial court's denial of his application for compensation and, for that reason, there is nothing before this court for review. Movant did not file a motion for new trial after the court's order was entered denying his application for compensation. However assuming, without ruling, that the failure of movant to file a motion for new trial leaves nothing before this court for review, nevertheless, we would be compelled in the exercise of our discretion to resort to Civil Rule 79.04, V.A.M.R., which provides:

"Plain errors affecting substantial rights may be considered on motion for a new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

Our review of the record before us indicates the need for the exercise of the discretion vested in us by said rule and that we should consider the action of the trial court in denying movant's motion for compensation. Williams v. Southern Pacific Railroad Co., Mo., 338 S.W.2d 882; Crooks v. Crooks, Mo.App., 197 S.W.2d 689. We add here that the court's ruling was plainly erroneous and affected the substantial rights of the movant and manifest injustice has resulted therefrom.

Movant contends that "the trial court erred in denying the amended motion of movant for although a trial court's discretion as to costs in an equity case is reasonably broad, such does not contemplate arbitrary or capricious action, but is a legal discretion that must be guided by sound equitable premises, considered in the light of the facts of a particular case." Respondent contends that the trial court did not abuse its discretion when it denied the motion for compensation.

■  In the case of Oldham v. McKay, 235 Mo.App. 348, 138 S.W.2d 735, 1. c. 739, the court in a discussion of the discretion possessed by a trial court in equity suits, in connection with the assessments of costs, said:

"* * * It is a legal discretion that must be guided by sound equitable principles considered in the light of the facts of each particular case. The result, in an assessment of costs wherein the general rule is departed from, when examined in the light of all of the circumstances, must embody some justification in equity and good conscience, otherwise there is a manifest abuse of discretion which warrants the intervention of an appellate court."

It is a legal discretion that must be exercised and while the court may have a discretionary choice, it cannot exercise it even to its own satisfaction, unless it is controlled and disciplined according to legal standards and reasoning.

The court in its order denying compensation to movant found that the "audit of sales cards of Lake Charles Memorial Park, Inc., to determine the amount of completed sales was not accomplished." This finding is not supported by the record. The reports that were filed by movant showed the completed sales of lots by periods as requested. Each of the three reports shows these figures. In the colloquy between the court and the attorney for the respondent, the attorney admitted that the movant had determined the sales. His only complaint was that the movant had determined 25% of some of the sales "which (he said) was absolutely not in accord with the instructions." The attorney

for respondent admitted, in answer to a question by the court, that the basic figure that the movant used to arrive at his result would be the same whether multiplied by 25% or 5%. The evidence shows that none of the attorneys, including the attorney for respondent, ever complained to the movant that he was not following instructions, nor did any of them contend that the figures he submitted were inaccurate.

It will be remembered that after the movant submitted his first report, which showed the total sales, some of which were computed at 5% and some at 25%, he wrote the letter to the Judge of the Court wherein he sought clarification of instructions, and sent a copy of the letter to all of the attorneys. Despite his request for further instructions, none were forthcoming, nor was any complaint made about computing some of the sales at 25%. The second and third reports submitted by the movant showed the total sales by periods as requested and showed a computation of 5% of these sales. It is true that other computations of interest etc. were also shown on these last two reports because no answer was received from his letter and movant sought further information from Mr. Becker, attorney for the plaintiffs.

The court in its order denying compensation further found that he did so "because of the intervention of the then attorney for plaintiffs." It will be noted in the letter of July 16, 1959, written to the trial Judge, that Mr. William J. Becker, attorney for the plaintiffs, was reluctant to instruct the movant in the matters in which he sought information and suggested to movant that he seek information from the court. As we have said, movant received no answer from the court nor from the other attorneys. Movant thereafter sought the help of Mr. Becker, attorney for the plaintiffs, because it was his understanding that his instructions were to come from Mr. Becker and he sought these instructions from him inasmuch as he received no in-structions from the other attorneys. We do not believe that movant can be criticized for seeking this information from Mr. Becker when he received no attention or response to his letter to the trial Judge. Frankly, the finding of the trial Judge denying the compensation to the movant because of the intervention of the then attorney for plaintiffs fails to find support in the record because there is no evidence whatever as to the conduct of said attorney. We agree with the contention of movant that he should not be criticized and denied compensation because he took instructions from Mr. Becker. He sought help from the trial Judge and from all of the attorneys in the case and in his quandary sought the help of Mr. Becker who was one of the attorneys in the case. We find no evidence of any wrongful conduct on the part of plaintiffs' attorney. We do find evidence that the audit of the sales was accurately and correctly completed and that no complaints were ever made, even at the hearing on the motion for compensation, about the accuracy of these figures. The complaint of the respondent because of the use of 25% on some of the sales rather than 5% was a matter concerning a mere mathematical computation, as was suggested by the trial Judge in his interrogation of the attorney for respondent.

The court also in its order indicated that the purpose for which the audit was made was not accomplished. We think this finding is refuted by paragraph 18 of the settlement contract which contains the following language:

> "The obligation of the Company to make contributions to the Perpetual Care Fund on account of 'pre-need' sales heretofore made is included *in the accounting of the Brusselback Report* and is settled by this agreement." (Emphasis ours.)

The settlement contract also refers to the agreement of June 6, 1939, wherein it was agreed to allot 25% of the net sales of lots sold until the Perpetual Care Fund provided

for in the October 14, 1922, agreement reached the minimum requirement of $3750 per acre. This was the basis of the use of the 25% computation in the first of the movant's reports. Throughout the settlement contract, which was in evidence and is a part of the court's records, it is obvious that the movant's reports of his audit and his computations were used by the parties and their attorneys in arriving at the settlement. It is interesting to note that the court approved and allowed payment to the attorney for the plaintiffs of the sum of $7500 for attorney's fees. Such approval and allowance by the court are not consonant with a finding or charge of wrongful intervention upon the part of the attorney for the plaintiffs in the preparation of the accountant's report.

■ It appears that the only basis for respondent's opposition to the allowance of compensation to the movant is because he had multiplied the basic figures of the sales by 25% rather than 5% in his first report. We think the reason for the use of the percentage of 25% is clearly demonstrated in the record. However this may be, the subsequent two reports did show the computation of 5% applied to the total sales. There is no merit to respondent's contention in this respect for the reason that the basic figures are admittedly correct. As stated by movant, if counsel for respondent thought that movant's first report was incorrect, he should have responded to the letter dated July 16, 1959, after he received a copy thereof and voiced such alleged inaccuracy. This he did not do.

■ Respondent makes a further contention that the court found that Mr. Becker "undertook to guide and control said audit without the court's approval and knowledge * * *." This finding is not supported by the record but, frankly, is immaterial because, as we have pointed out, movant, pursuant to the court's order did "conduct audit of sales cards of Lake Charles Memorial Park, Inc., to determine amount of completed sales." The computation of 5% of

these sales is shown on the second and third reports submitted by the movant. Thus, he performed all of the services he was requested to perform and should be compensated therefor. No charge is made that the amount requested is unreasonable. We rule that the court should have sustained movant's motion for an order directing payment for his services.

The order and judgment of the court is reversed and the cause is remanded with directions to the trial court to enter judgment in favor of movant in the sum of $1437.50, with interest thereon at the rate of 6% per annum from February 18, 1963, and that said judgment be taxed as costs in favor of said movant.

WOLFE and ANDERSON, JJ., concur.

On Motion for Rehearing

PER CURIAM.

■ Respondent contends in its Motion for Rehearing and Suggestions in support thereof that we "overlooked the fact that the issue of credibility lay between the uncorroborated testimony of an interested witness, the appellant, movant and the 'testimony' of the trial judge contained in his written findings of fact." The immediate answer to this is that there was no testimony of the trial judge in the record. And the finding of fact made by the trial judge "that the purposes for which said movement was appointed on April 30, 1959, 'by consent of parties' to conduct an 'audit of sales cards of Lake Charles Memorial Park, Inc. to determine amount of completed sales' was not accomplished because of the intervention of the then attorney for plaintiffs;" is not testimony and is a finding made by the Court based upon the record of the hearing before it. In our opinion we found that this finding was not supported by the record facts in evidence. This does not involve a question of credibility between an uncorroborated witness and the Judge of the Court, but presents a question whether

or not the judgment of the Court in making this finding was correct. What the Court did find was that the purpose of the audit was not accomplished because of the intervention of the then attorney for plaintiffs. In our opinion we found that there was no evidence to support such a finding and we further found that an audit of sales cards of the Lake Charles Memorial Park, Inc., to determine the amount of completed sales was made.

■ Respondent in its Motion for Rehearing and in its Suggestions in Support thereof also contends that we substituted our judgment "based upon a rather sketchy record, for the judgment of the trial court in a matter which extended from June 15, 1958 when the action was filed until March 31, 1961 when the matter was settled by stipulation of parties. During this period of time, beside the ordinary pleadings which were filed, the trial court appointed a Commissioner to conduct an election, appointed Trustees in accord with said election, appointed a special custodian for funds, held pretrial conferences, ordered respondent's attorney to act as trustee of funds, held a hearing on the petition to appoint a receiver, ruled on said hearing, held a hearing on a request for change of venue and ruled thereon, and held a number of informal conferences with counsel and sometimes with the parties present." As indicated none of the aforesaid matters are contained in the record before us and in the suggestions in support of its Motion for Rehearing respondent has said "perhaps the state of the record is responsible for what is felt to be an erroneous result." For this reason it contends that if this Court should deny a

Rehearing that it remand the cause for further proceedings as was done in the case of Scheufler v. Continental Life Ins. Co., 350 Mo. 886, 169 S.W.2d 359. In that case the general counsel for various superintendents of insurance of the State of Missouri in the proceedings involving the Continental Life Ins. Co. appealed from an order of the Circuit Court of the City of St. Louis allowing him an attorney's fee of $7500 contending that the allowance was grossly inadequate and should have been for the sum requested, namely, $17,000. This case, as the Court indicated, involved very complicated and hotly contested proceedings which included several trials and appeals. In that case the Supreme Court reversed and remanded it for a new hearing for the reason that it did not appear from the record that the trial court did in fact take judicial notice of all of the prior proceedings in the cause and determine the matter of fees on that basis. This is not a case that determines whether or not the attorney and the general counsel for the various insurance superintendents were entitled to a fee. It was merely a question of determining the reasonable value of his services and fixing a fee accordingly. That is not the issue in the instant case. In the instant case the issue is whether or not movant, appellant, is entitled to a fee. All of the proceedings that transpired in the case, referred to in Respondent's Motion for Rehearing, in our opinion can have no material effect on the issue of movant's right to a fee. As we have pointed out there has been no contention that the fee asked is unreasonable. Respondent's Motion for Rehearing is overruled.