John S. SADOWSKI and Selma J. Sadowski, Appellants,

v.

Greg R. BREWER, Respondent.

No. 13764.

Missouri Court of Appeals, Southern District, Division Two.

June 27, 1985.

Robert W. Stillings, Springfield, for appellants.

No appearance for respondent.

CROW, Judge.

John S. Sadowski and Selma J. Sadowski ("plaintiffs"), grandparents of Melissa Ann Brewer ("Missy"), petitioned the Juvenile Division of the Circuit Court of Christian County per § 452.402, RSMo 1978, for reasonable visitation rights with Missy, alleging that Missy's mother—plaintiffs' daughter Carol Jean—was deceased, that Missy was residing with her father, Greg R. Brewer ("defendant"), and that he had refused to allow plaintiffs to have reasonable visitation with Missy.

The trial court appointed a guardian ad litem for Missy, conducted a hearing, and entered judgment granting plaintiffs a carefully drafted schedule of visitation rights. The judgment awarded a $400 fee to Missy's guardian ad litem, taxing it as costs. § 514.335, RSMo Supp.1983. All costs were assessed against plaintiffs.

Plaintiffs appeal, their sole complaint being that the trial court erred in taxing the costs against them.

The pleadings and evidence established that Missy, the only child of the marriage between defendant and plaintiffs' daughter Carol Jean, was born May 29, 1977, that the marriage of defendant and Carol Jean was dissolved October 9, 1981, that the decree of dissolution awarded custody of Missy to Carol Jean and granted defendant visitation rights, and that Carol Jean died August 10, 1983.

At the time of Carol Jean's death, Missy was with defendant pursuant to his visitation rights. Defendant immediately assumed primary custody of Missy. According to plaintiffs, defendant made a demand on them for a share of the proceeds of a $20,000 insurance policy on Carol Jean's life. Plaintiffs refused, whereupon defendant forbade any further contact between them and Missy. Plaintiffs filed this action September 27, 1983.

Plaintiffs' evidence, in substance, was that defendant spurned all of their entreaties for visitation. Defendant's evidence, in substance, was that plaintiffs made none.

The trial court, in its judgment, found that defendant had refused to allow plaintiffs reasonable visitation rights. That finding was supported by substantial evidence, and we need not lengthen this opinion by summarizing it.

Plaintiffs maintain that under Rule 77.01, Missouri Rules of Civil Procedure (15th ed. 1984), the trial court was required to assess the costs against defendant. Rule 77.01 states:

"In civil actions, the party prevailing shall recover his costs against the other party, unless otherwise provided in these rules or by law."

Alternatively, plaintiffs contend that if the taxing of costs against defendant was not mandatory under Rule 77.01, the trial court nonetheless abused its discretion in taxing the costs against them inasmuch as this suit was necessitated by defendant's arbitrary refusal to let them see Missy.

Rule 77.01, *supra*, was adopted June 5, 1980, effective January 1, 1981. It is substantially the same as prior Rule 77.06, which provided:

"In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law."

Prior Rule 77.06 appeared in the above form as far back as 1959. *See* Vol. 4, RSMo 1959, p. 5008.

Section 514.060, RSMo 1978, which has remained unchanged since RSMo 1949, states:

"In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law."

Although the statute and rules just cited are mandatory in tone, the following cases, among others, have held that in equity actions, courts have inherent discretionary power to award costs, that either party may be ordered to pay the costs or they may be apportioned among the parties, and that the determination of this question by the trial court will not be disturbed by an appellate court unless there is an abuse of discretion. *Gieselmann v. Stegeman,* 470 S.W.2d 522, 525[5] (Mo.1971); *Community Land Corp. v. Stuenkel,* 436 S.W.2d 11, 18[12, 13] (Mo.1968); *Schwartz v. Shelby Construction Co.,* 338 S.W.2d 781, 795[16] (Mo.1960); *Sitzes v. Raidt,* 335 S.W.2d 690, 703[10] (Mo.App.1960); *Amitin v. Izard,* 262 S.W.2d 353, 356[2, 3] (Mo.App.1953).

We therefore examine the record to determine whether the taxing of costs against plaintiffs was an abuse of discretion.

In deciding that issue, we note that at the time of the dissolution between defendant and Carol Jean, she was residing in Ozark with Missy. Plaintiffs reside 2 miles east of Ozark. For the first year and a half after the dissolution, plaintiff Selma Sadowski took care of Missy from 6:30 a.m. to 4:30 p.m., while Carol Jean was at work. Carol Jean eventually married Terry Bradley and moved to Strafford, but she frequently bought Missy to visit plaintiffs. Plaintiffs' activities with Missy included swimming, boating, flying in plaintiff John Sadowski's airplane, feeding plaintiffs' farm animals and riding the tractor. The evidence showed, without contradiction, an excellent relationship between plaintiffs and Missy. The trial court found that visitation by plaintiffs would be in Missy's best interests and would not endanger her physical health or impair her emotional development.

Defendant, on January 14, 1983, had married his present wife, Cathy Jean. At time of trial, defendant and Missy were living with Cathy Jean and her two children, a son age 10 and a daughter age 8, in a three-bedroom home owned by Cathy Jean in Nixa.

Regarding the insurance dispute, defendant testified:

"The insurance policy was brought up, but I've known all along that I had no right to it. It was to my daughter. That's her money. I never said—the only thing I've ever suggested, that at the time of the funeral, or a little bit after, or the following day of the funeral I did say that in the future with a two— three-bedroom house Melissa would need another bedroom, and I asked [plaintiff John Sadowski] as part of that, that maybe through the years I could have a little bit of interest off of her estate, that maybe could go to help me build on a room for her, because anybody that knows what I make at Fasco knows that it's hard to get by with what you've got, let alone adding anything else on."

At a hearing on September 14, 1983, in the Probate Division of the Circuit Court of Christian County regarding Missy's estate, defendant admitted he had once stated that plaintiffs "might have to go through court" to obtain visitation.

Plaintiff John Sadowski testified that the day after Carol Jean's funeral, defendant came to plaintiffs' home and stated: "John, you know I don't make very much money. I need $6,000.00 of that money."

John Sadowski testified that he explained to defendant that Carol Jean, in her will, left all her property to Missy "and that's exactly where it's going to go." John added that he phoned defendant on August 28, 1983, to discuss visitation and that defendant terminated the conversation by stating: "[I]n fact, my daughter will hate you the rest of your life."

Plaintiff Selma Sadowski quoted defendant as saying that she had kept him from the money and that he was going to keep Missy from them. Defendant, according to Selma, said that plaintiffs could never see Missy again or talk to her on the phone, so "just don't bother him."

Irrespective of whose version of the quarrel the trial court believed, it is evident that defendant's refusal to allow plaintiffs

reasonable visitation with Missy resulted from his pique over plaintiffs' rejection of his request regarding the insurance proceeds, and not because of any belief by defendant that Missy would be adversely affected by visiting plaintiffs.

A case strikingly similar to the one before us is *In Interest of Ray*, 602 S.W.2d 955 (Mo.App.1980). There the maternal grandparents—like plaintiffs here—brought an action under § 452.402, RSMo 1978, seeking reasonable visitation rights with two grandchildren, the offspring of their deceased daughter. The father of the children resisted the petition, but an evidentiary hearing resulted in a judgment in favor of the grandparents. All costs, including the fee for the guardian ad litem of the children, were taxed against the father. At that time, however, there was no statutory authority for taxing the guardian ad litem fee as costs.[1] The Court of Appeals nonetheless held that the trial court had inherent power to grant the guardian ad litem a fee in the form of a judgment in his favor and against the father. Inasmuch as the trial court had found that the father had refused the grandparents reasonable visitation, it was proper for the father to bear such fee.

Discussing the taxing of costs in equity cases, *Oldham v. McKay*, 235 Mo.App. 348, 138 S.W.2d 735, 739–40[4–7] (1940) states:

"While, as a general rule, a plaintiff who prevails in an equity suit is entitled to have his costs, nevertheless, it is uniformly held that in an equity case a court has a rather broad discretion in determining who shall bear the burden of costs. This is particularly true where there are several issues, and some are found in favor of plaintiff and some in favor of the defendant. A trial court's determination of this question will not be disturbed by an appellate court, short of an abuse of discretion.... We think it an equally sound and well recognized rule that

while this discretion is reasonably broad, it does not contemplate arbitrary or capricious action. It is a legal discretion that must be guided by sound equitable principles considered in the light of the facts of each particular case. The result, in an assessment of costs wherein the general rule is departed from, when examined in the light of all the circumstances, must embody some justification in equity and good conscience, otherwise there is a manifest abuse of discretion which warrants the intervention of an appellate court." (Citations omitted.)

In the instant case, we espy nothing in the record justifying the taxing of costs against plaintiffs. The trial court made no findings other than those in the judgment, and it is barren of any explanation for the decision about the costs. Defendant declined to file a brief, so we are without the benefit of any reason he might have been able to offer.

Finding no justification for taxing the costs against plaintiffs, we hold that the trial court abused its discretion in doing so.

The judgment is affirmed in all respects except that portion which assesses the costs against plaintiffs. That portion is reversed and the cause is remanded to the trial court with directions to amend the judgment to provide that all costs are assessed against defendant. The costs of this appeal are assessed against defendant.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.

---

1. There was such authority when the judgment was entered in the instant case (April 4, 1984). Section 514.335, RSMo Supp.1983, provides: "In any court case ... in which a guardian ad litem is appointed by the court to safeguard the interests of a minor and in which the minor is not a party, the court may allow the guardian ad litem a reasonable compensation for his services, which shall be taxed as costs in the case or proceeding."